UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

NICK GORDON,

                                        Plaintiff,

        -against-

Police Officer FRANCK EMMANUEL, Shield No. 21633;
Police Officer RAUL DUENO, Shield No. 19800,
Lieutenant LAYNE; BEHROOZ BENYAMINI; ELIAS
EID; BHNWN 8th STREET LLC; and JOHN and JANE
DOE 1 through 11, individually and in their official
capacities (the names John and Jane Doe being fictitious as
the true names are presently unknown),

                                        Defendants.

15-CV-02439(CBA)(VMS)

Hon. Carol Bagley Amon

------------------------------------------------------------------------ X

# **CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6), WITH PREJUDICE**

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2572

Of Counsel:
Angharad K. Wilson

## **TABLE OF CONTENTS**

Table of Authorities…………………………………………………………………………….ii

Preliminary Statement…………………………………………………………………………..1

Argument……………………………………………………………………………………….2

    I.        Malicious Prosecution…………………………………………………………….2

    II.       Qualified Immunity………………………………………………………....…….7

    III.      Conspiracy……………………………………………………………...…...…..11

    IV.      Failure to Intervene…………………………………………………….……….12

Conclusion……………………………………………………………………………….......13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amore v. Novarro*,
   624 F.3d 522 (2d Cir. 2010)..................................................................................................7, 10

*Babi-Ali v. City of New York*,
   979 F. Supp. 268, 275 (S.D.N.Y.).................................................................................................10

*Bang v. Utopia Restaurant*,
   923 F. Supp. 46, 49 (S.D.N.Y. 1996)..........................................................................................11

*Bermudez v. City of New York*,
   790 F.3d 368 (2d Cir. 2015).........................................................................................................9

*Biswas v. City of New York*,
   973 F. Supp. 2d 504 (S.D.N.Y. 2013)...................................................................................11, 12

*Cornett v. Brown*,
   04-CV-0754 (DGT), 2006 WL 845568 (E.D.N.Y.) .....................................................................3

*Curley v. Village of Suffern*,
   268 F.3d 65 (2d Cir. 2001)............................................................................................................2

*Danielak v. City of New York*,
   2005 U.S. Dist. LEXIS 40901 (E.D.N.Y. Sep. 26, 2005).......................................................4, 10

*Jean v. Montina*,
   412 F. App'x 352 (2d Cir. 2011) ...............................................................................................5, 8

*Jean-Laurent v. Wilkinson*,
   540 F. Supp. 2d 501 (S.D.N.Y. 2008).........................................................................................12

*Khaja-Moinuddin v. City of New York*,
   2010 U.S. Dist. LEXIS 102914 (E.D.N.Y. Sep. 27, 2010)......................................................4, 10

*Lowth v. Town of Cheektowaga*,
   82 F.3d 563, 571 (2d Cir. 1996)...........................................................................................3, 4, 7

*Martinez v. Simonetti*,
   20 F.3d 625 (2d Cir. 2000)............................................................................................................2

*Miloslavsky v. AES Eng'g Society*,
   808 F. Supp. 351 (S.D.N.Y. 1992)................................................................................................2

*Ricciuti v. N.Y.C. Trans. Auth.*,
   124 F.3d 123 (2d Cir. 1997) ................................................................................................10

*Russo v. City of Bridgeport¸*
   479 F.3d 196 (2d Cir. 2007) ..................................................................................................5

*Sankar v. City of New York*,
   867 F. Supp. 2d 297 (E.D.N.Y.) ............................................................................................6

*Sforza v. City of New York*,
   2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ..................................................5, 10

*Singer v. Fulton County Sherriff*,
   63 F.3d 110 (2d Cir. 1995) .................................................................................................2, 7

*Sulkowska v. City of New York*,
   129 F. Supp. 2d 274 (S.D.N.Y. 2001) ....................................................................................9

*Tchatat v. City of New York*,
   14-cv-2385 (LGS), 2015 WL 5091197 (S.D.N.Y. Aug. 28, 2015) .......................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................1

**Preliminary Statement**

Defendants Raul Dueno, Franck Emmanuel and Joseph Layne respectfully submit this memorandum of law in further support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In plaintiff's opposition ("Pl. Opp.") to City defendants' motion, he makes several claims regarding City defendants' characterization of the record in this case. (Pl. Opp. pp. 6-7). Defendants' moving papers speak for themselves on this matter. For his part, plaintiff takes a number of liberties with the record, including characterizing the 911 operator who took BHNWN Defendants' 911 call as "deeply skeptical", and describing plaintiff as a debtor-in-possession at the time of the incident, even though the bankruptcy stay had terminated several months prior to the incident.

There are no allegations in the Amended Complaint that suggest that the BHNWN defendants were unreliable, or that officers who responded to the 911 call should have known they were unreliable. According to the Amended Complaint, defendant officers responded to the scene (a multi-unit apartment building, which was then being renovated) in the early afternoon on a weekday[1]. At that building, they encountered a group of men (the BHNWN defendants) who were the winners of a foreclosure auction on the property conducting an inspection. The officers also encountered plaintiff, who told them that he was the owner of the building, that the men were strangers to him, and that one of the men had pushed him. The officers further spoke to an individual who was with plaintiff, who confirmed plaintiff's account of the events.

---

[1] The Court may take judicial notice of the fact that March 5, 2014 was a Wednesday.

**Argument**

I.   **Malicious Prosecution**

Plaintiff's principal argument against dismissal of the malicious prosecution claim appears to be that City defendants lacked probable cause to arrest plaintiff based on the statements of BHNWN defendants because those witnesses were not reliable and, thus, their statements should have been corroborated. In this connection, plaintiff's opposition incorrectly asserts that "in the context of an arrest and prosecution, the uncorroborated statements of a civilian simply do not provide probable cause," (Pl. Opp. p. 8).

On the contrary, it is well established that "an arresting officer advised of a crime by a person who claims to be the victim . . . has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton County Sherriff, 63 F.3d 110, 119 (2d Cir. 1995)See also, Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); Martinez v. Simonetti, 20 F.3d 625, 634 (2d Cir. 2000); Miloslavsky v. AES Eng'g Society, 808 F. Supp. 351 (S.D.N.Y. 1992)("[t]he veracity of citizen complainants who are the victims of the very crime they report is assumed.") (emphasis added).

Many of the decisions on which plaintiff relies do not support his arguments; rather, those decisions hold that – as in the circumstances presented here – the police had probable cause based on the complaining victim's report of the crime.  *See*, *Miloslavsky*, 808 F. Supp. at 355 (finding that officers were justified in arresting plaintiff based on the word of a complainant where plaintiff was acting disruptive and refusing to leave the annual meeting of a society from which plaintiff had previously been expelled); *Singer*, 63 F.3d at 119 (finding that the allegations by a store employee made out the elements of the crime of larceny, in spite of the fact that the circumstances of the arrest led to questions about the motivations of the arresting officer and

possibly the store employees); *Cornett v. Brown,* 04-CV-0754 (DGT), 2006 WL 845568 *4 (E.D.N.Y.)(the section of the decision quoted by plaintiff concerns an arrest for threatening the plaintiff and violating an order of protection based on the word of the putative victim, with whom plaintiff had a long-standing dispute).

Plaintiff alleges that "the police officers had every reason in the world to question the truthfulness and reliability of the BHNWN defendants, just as the 911 operator had minutes earlier." (Pl. Opp. p. 10). Three reasons are cited to doubt the veracity of the BHNWN defendants and/or to support plaintiff's malicious prosecution claim: (1) plaintiff's allegation that the BHNWN defendants had no sign of injuries and refused medical treatment on scene, (2) the fact that the defendant officers did not credit the statements of one eyewitness and did not interview the other eyewitness who plaintiff alleges would have corroborated plaintiff's version of events, and (3) plaintiff's alleged ownership of the building at the time and his "good faith, correct belief" that BHNWN defendants were trespassing. None of these purported "facts" undermines probable cause in the circumstances here.

First, plaintiff alleges, "the BHNWN defendants had no sign of injuries or bruising and refused medical treatment at the scene, yet presented allegations of an assault and physical injury." (Pl. Opp. p. 10). In support of this, plaintiff cites *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).[2] *Lowth* concerned a false arrest claim arising from an incident that culminated in a woman getting into an altercation with a plain clothes officer at the scene. The Second Circuit found that summary judgment on a malicious prosecution claim for resisting arrest was inappropriate. There was undisputed evidence that plaintiff repeatedly shouted for her

---

[2] Plaintiff cites *Lowth,* 82.F3d at 571; however, from context, it appears that the citation should be to *Lowth*, 82 F.3d at 572-573. It is unclear as plaintiff's brief fails to explain what proposition it is being cited to support.

husband to call the police while she scuffled with the officer and that she stopped fighting with the officer when he identified himself as an officer. *Id.* at 573. From these facts, the court concluded it was reasonable to infer that she did not know she was being arrested at the time she was grappling with the officer. Because knowledge is an element of a charge of resisting arrest, the Second Circuit found that dismissal of the claim was inappropriate.

The analysis in *Lowth* is not applicable to the present case. In that case, knowledge was an element of the crime that was charged, and there was reason to believe that the officer initiating the prosecution was aware that the plaintiff lacked the requisite knowledge to be charged with the crime of resisting arrest. *Id*. In contrast, the officers in this case did not personally witness the crime that they were charging, nor were they involved parties or complaining witnesses themselves (as was the officer in *Lowth*), and thus, had no first-hand knowledge that would lead them to believe that a charge of assault would be inappropriate.

Moreover, probable cause or at least arguable probable cause can exist for the arrest of individuals for assault where complainants' injuries are not necessarily visible. *See, e.g., Danielak v. City of New York*, 2005 U.S. Dist. LEXIS 40901 *23 (E.D.N.Y. Sep. 26, 2005)(finding probable cause to arrest and prosecute plaintiff based on the statement of his girlfriend that he had hit her in the face and broken her glasses, even though no evidence was adduced suggesting that the complainant had visible injuries and she testified that she did not recall showing the officers the broken eyeglasses); *Khaja-Moinuddin v. City of New York*, 2010 U.S. Dist. LEXIS 102914 *17 (E.D.N.Y. Sep. 27, 2010)(finding probable cause to arrest plaintiff based solely on a domestic violence report filed against him by his wife, even though plaintiff asserts that the allegations contained therein are fabricated, and plaintiff alleged that the officer arrested him out of animus towards men and the complainant attained permanent

residency status under the Violence Against Women Act). *Sforza v. City of New York*, 2009 U.S. Dist. LEXIS 27358 at * 42 (S.D.N.Y. Mar. 31, 2009)(finding that a complainant's alleged lack of visible injuries does not constitute "plainly exculpatory evidence" that would undermine probable cause to arrest plaintiff for third degree assault).

Plaintiff further alleges that "the officers unreasonably disregarded the statement of one witness and refused to hear from the other one altogether." (Pl. Opp. p. 10). In support of the proposition that defendants should have spoken to plaintiff's other witness, plaintiff cites *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007), where the Second Circuit found that officers should have reviewed video footage of a robbery after plaintiff pointed out that he had prominent tattoos in order to confirm that the perpetrator in the footage had those same tattoos. But *Russo* is factually dissimilar to the present case, and does not provide support for plaintiff's assertion. An officer reviewing a surveillance tape, looking for specific objective evidence that a criminal defendant had made him aware of is a far cry from an officer speaking to a second eyewitness who, plaintiff alleges in conclusory terms, would have given an account that was substantially similar to that given by plaintiff and the first eyewitness. In fact, there is case law supporting the fact that officers do not need to interview every witness at a scene prior to making an arrest. *See*, *e.g.*, *Jean v. Montina*, 412 F. App'x 352, 353-54 (2d Cir. 2011).

Finally, "Mr. Gordon had alerted the officers to his ownership of the building, along with his good faith, correct belief that the BHNWN defendants were trespassing; the nature of the underlying dispute called for further investigation and corroboration before making an arrest." (Pl. Opp. pp. 10-11). Plaintiff's account of the ownership of the building is self-serving at best. While plaintiff may or may not have had a good-faith belief that the BHNWN defendants were trespassing, plaintiff cannot plausibly allege that BHNWN defendants were *in fact* trespassing,

let alone that it would be unreasonable for the responding officers to conclude that BHNWN defendants were not trespassing. BHNWN was the successful bidder at the foreclosure auction; the legitimacy of that auction is not in question for the purposes of this malicious prosecution lawsuit.

Further, neither plaintiff's complaint nor plaintiff's opposition brief alleges that plaintiff could produce any evidence at the scene of the incident to prove that he was the owner of the property, or more importantly, that he had the exclusive right to determine who could be inside the property. Given the uncertainty over the possession of the property, the fact that it was not the residence of any of the parties involved, and the fact that there is no allegation that either party had a court order barring others from the property, the officers who arrive on the scene could not reasonably be expected to determine that any of the parties were trespassing in the property at the time.

Plaintiff cites *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y.) in support of the proposition that prior relationships between parties that give rise to motives for false accusations are the most common situations in which doubts about the complainants arise. This decision is inapplicable. As plaintiff alleges, the BHNWN defendants "were strangers to [plaintiff and the real estate agent]." (DE 23 ¶ 40). He further alleges that at the time of the incident, he was not even aware that the foreclosure auction had already taken place. (DE ¶ 30). Under these circumstances it can hardly be alleged that plaintiff and BHNWN Defendants had a prior history that would give rise to a motive for false charges. In fact, plaintiff's statement that he was the owner of the building and the BHNWN defendants were trespassing are merely evidence that there was a dispute over the possession of the property.

Finally, plaintiff argues that the cases cited in City Defendant's moving papers do not support defendants' arguments because they were decided at the summary judgment stage or later, and that they "generally involve objective evidence of criminality and rigorous police investigation." As to the first point, the stage at which a case is decided only affects the facts or allegations that the Court may take into account, not the substantive law. As to the second point, BHNWN defendants' allegations, and the fact that there was no reason to disbelieve them, along with the fact that plaintiff was still in the building are sufficient evidence of criminality to create probable cause to arrest plaintiff. *See, e.g. Singer*, 63 F.3d at 119.

## II.     Qualified Immunity

Even if it is not found that the officer defendants had probable cause to arrest plaintiff, they are entitled to judgment in their favor under the doctrine of qualified immunity. As long as it was "objectively reasonable" for the officers to arrest plaintiff at the scene, and as long as the officers did not learn any information later, before they signed out the complaint in plaintiff's prosecution, that would undermine probable cause, the officers are entitled to qualified immunity on plaintiff's malicious prosecution claim. *See Lowth*, 82 F.3d at 571-72 (where officer's arrest of plaintiff was objectively reasonable, officer entitled to qualified immunity on malicious prosecution claim unless "between the time of the arrest and the time that he arrived at the police station and actually charged [plaintiff], he had received information that was sufficient to eliminate probable cause as to any of the crimes charged"). It is well-established that "arguable probable cause" is sufficient to render an arrest "objectively reasonable." *See Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (citations omitted).

Plaintiff argues that qualified immunity is not available to City defendants because they: "(1) fabricated police reports to reflect injury where none existed; (2) ignored credible evidence

of innocence in the form of eyewitness testimony; (3) refused to hear from a second, readily available eyewitness; (4) failed to reasonably investigate the BHNWN defendants' trespass; and (5) forwarded the false paperwork to prosecutors…" (Pl. Opp. p. 26). We submit that none of these arguments defeats qualified immunity here.  Plaintiff characterizes officer defendants' failure to credit his testimony and that of the eyewitness he had with him as "ignor[ing] credible evidence." But it was not  objectively unreasonable for the officer defendants to have come to the conclusion that BHNWN defendants were telling the truth about being attacked, especially in light of the acknowledged fact that they called 911 seeking police assistance.

     Plaintiff's argument that the officers refused to speak to his second eyewitness fails on two accounts: as plaintiff admits, the eyewitness would have given an account largely similar to plaintiff and the first eyewitness. Further, officers are not required to interview every witness on a scene prior to making an arrest. *See, e.g., Jean*, 412 F. App'x at353-54  (affirming a probable cause finding where the officers did not interview the arrestee or other witnesses). It was thus objectively reasonable for the officers not to interview the second witness.

     Plaintiff's argument that officers failed to reasonably investigate the BHNWN defendants' alleged trespass is also unavailing. It was objectively reasonable for officers to conclude that individuals who claimed that they were the winners of a foreclosure auction on a property and were conducting an inspection of that property had license to be in the property, whether or not plaintiff ultimately had the right to exclude people from the property. Moreover, the fact that plaintiff told the officer that he was the owner of the property only proves that there was a dispute over the ownership of the property, not that either group was trespassing. In the absence of a warrant or court order excluding one or the other party from the property, it was

reasonable for the officers to determine that they could not arrest either party for trespass (which, ultimately, they did not).

Finally, plaintiff argues that the claimed fabrication of evidence should bar City defendants from receiving qualified immunity for their arrest. Plaintiff asserts that the police fabricated a report that the BHNWN defendants were "injured" when in fact they were not. Even taking this "fabrication" allegation as true, the alleged fabrication does not undermine the probable cause element of the malicious prosecution analysis, it can only arguably serve as evidence showing that defendants initiated the prosecution or acted with malice.

As to the initiation element, it cannot fairly be disputed that the District Attorney's Office, which controlled the prosecution, had access to these witnesses, and the assigned ADA easily could have seen for himself or herself whether they sustained injuries. For this reason, the purported "fabrication" that plaintiff alleges is not of the type that would undermine the presumption of independent prosecutorial action. *See, e.g.*, *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)(affirming summary judgment on malicious prosecution claim where prosecutors independently interviewed witnesses and did not need to rely on the defendant officers' possibly misleading statements).

As to the malice element, probable cause and malice are separate elements of malicious prosecution, so if the defendants had probable cause for the prosecution, the question of malice becomes irrelevant. *See, e.g., Sulkowska v. City of New York*, 129 F. Supp. 2d 274 (S.D.N.Y. 2001) (citation omitted)( "[W]hile the absence of probable cause may bear on the malice issue, the two remain independent elements of a malicious prosecution action.")  In any event, as noted above, the presence or absence of visible injuries is not decisive on the question of probable

cause here. *Danielak*, 2005 U.S. Dist. LEXIS 40901 at *23; *Khaja-Moinuddin*, 2010 U.S. Dist. LEXIS 102914 ; *Sforza*, 2009 U.S. Dist. LEXIS 27358 at * 42.

In support of this argument, plaintiff also cites *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 129-30 (2d Cir. 1997), which rejected the argument that an officer could escape liability for fabrication of evidence where the defendant officers claimed they had probable cause for the prosecution of plaintiff even without plaintiff's allegedly fabricated confession. However, in doing so, the Second Circuit announced a separate tort, that of denial of a fair trial through the fabrication of evidence. *Id.* at 130. In fact, the court in *Ricciuti* reversed the lower court's decision to dismiss the malicious prosecution claim *on other grounds* (whether the complainant had suffered "serious physical injury"). *Id. Ricciuti*, therefore, does not support plaintiff's assertion that the purported "fabrication" in this case undermines probable cause for his arrest.[3]

Plaintiff's counsel stated in his July 28, 2015 Letter in Opposition to a Pre-motion conference that he was contemplating amending the complaint to add claims for, *inter alia*, denial of a right to a fair trial. But plaintiff's First Amended Complaint, which for the first time reflects plaintiff's purported allegation that City defendants "fabricated" evidence, does not include any claim for denial of the right to a fair trial – plaintiff evidently concluded that he could not adequately plead the claim. Plaintiff's eleventh-hour allegations regarding purported "fabrication," therefore, should not undermine qualified immunity on the claim against City Defendants for malicious prosecution, and that claim should be dismissed because, at a minimum, "arguable probable cause" existed for plaintiff's arrest and prosecution. *See Amore*, 624 F.3d at 536.

---

[3] In the other case cited, *Babi-Ali v. City of New York*, there was insufficient probable cause absent the allegedly fabricated evidence, and the case is thus inapposite. 979 F. Supp. 268, 275 (S.D.N.Y.).

**III.     Conspiracy**

Plaintiff appears to misconstrue the City's arguments in support of dismissal of the conspiracy claim.  He asserts that City defendants argue that a prior relationship must exist between the co-conspirators in order to state a claim for conspiracy under §1983. We do not make that argument, although the existence of a prior relationship speaks to the plausibility that the parties would engage in a conspiracy together. Otherwise, plaintiff has failed to plead sufficient facts supporting the inference that the City defendants and the BHNWN defendants conspired with each other.

The cases plaintiff cites do not support a claim for conspiracy in this case. One of them, *Bang v. Utopia Restaurant*, was decided under the more lenient pre-*Iqbal* pleading standard. 923 F. Supp. 46, 49 (S.D.N.Y. 1996), and is therefore of limited value. The other two present factual scenarios very different from the one in this case. *See, Tchatat v. City of New York*, 14-cv-2385 (LGS), 2015 WL 5091197 *5 (S.D.N.Y. Aug. 28, 2015)(finding that plaintiff stated a claim for conspiracy where plaintiff was visibly physically beaten and defendant officers did not speak to him at all to ascertain his version of events, as well as losing evidence in plaintiff's shoplifting trial); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 534 (S.D.N.Y. 2013)(plaintiff alleged that officials at her high school communicated with police officials prior to her arrest for sending threatening e-mails to two of her teachers, where the officials were not witnesses to the crimes).

In contrast to *Tchatat,* plaintiff has alleged that the defendant officers spoke to him and one of his witnesses prior to putting him under arrest. The BHNWN defendants are private citizens, not quasi-police security officials, who were the private defendants in that case. Further, the BHNWN defendants were the complainants in this case who could plausibly state personal knowledge of the events that transpired, unlike the school officials in *Biswas.* Further,

the plaintiff in *Biswas*, claimed that the school officials were in contact with the officers who arrested her prior to her arrest, unlike in this case where the officers merely arrived on the scene.

### IV.     Failure to Intervene

Plaintiff is correct in asserting that an official can be liable for failure to intervene if, "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)(citations omitted). However, as demonstrated in the sections on the claims for malicious prosecution and conspiracy, plaintiff's other civil rights claims must fail, and, if there is no violation of plaintiff's constitutional rights, plaintiff is not entitled to judgment on a failure to intervene.

## **Conclusion**

For the foregoing reasons, defendants' motion should be granted and the above-mentioned claims in the First Amended Complaint should be dismissed with prejudice.

Dated:   New York, New York
         November 6, 2015

                                        Respectfully submitted,

                                        ZACHARY W. CARTER
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendants Franck Emmanuel, Raul Dueno, and Joseph Layne*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2572


                                        By:            /s/
                                           Angharad K. Wilson, Esq.