UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

NICK GORDON,

                     Plaintiff,

            -against-

Police Officer FRANCK EMMANUEL, Shield
No. 21633; Police Officer RAUL DUENO, Shield
No. 19800; Lieutenant JOSEPH LAYNE; Police
Officer CORDERO, Shield No. 1289;
BEHROOZ BENYAMINI; ELIAS TAIED;
BHNWN 8TH STREET LLC; ROBERT
AINEHSAZAN; and JOHN and JANE DOE 1
through 11, individually and in their official
capacities (the names John and Jane Doe being
fictitious, as the true names are presently
unknown),

                     Defendants.

------------------------------------------------------------x

**SECOND AMENDED
COMPLAINT**

15 CV 2439 (CBA) (VMS)

Jury Trial Demanded

## NATURE OF THE ACTION

    1.    This is an action to recover money damages arising out of the violation
of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

    2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and
the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the
United States and the laws of the State of New York.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.     This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## <u>JURY DEMAND</u>

6.     Plaintiff demands a trial by jury in this action.

## <u>PARTIES</u>

7.     Plaintiff Nick Gordon is a resident of Kings County in the City and State of New York.

8.     Defendant Police Officer Franck Emmanuel, Shield No. 21633 ("Emanuel"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Emmanuel is sued in his individual and official capacities.

9.     Defendant Police Officer Raul Dueno, Shield No. 19800 ("Dueno"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Dueno is sued in his individual and official capacities.

10. Defendant Lieutenant Joseph Layne ("Layne"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Layne is sued in his individual and official capacities.

11. Defendant Police Officer Cordero, Shield No. 1289 ("Cordero"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Cordero is sued in his individual and official capacities.

12. Defendant Behrooz Benyamini, ("Benyamini"), upon information and belief, is a resident of the State of New Jersey. Plaintiff does not know the citizenship of defendants Elias Taied ("Taied") or Robert Ainehsazan ("Ainehsazan").

13. Defendant BHNWN 8TH Street LLC is a domestic limited liability company with a principal place of business in Nassau County, New York. Upon information and belief, defendants Benyamini, Taied and Ainehsazan are shareholders in and/or agents and/or employees of defendant BHNWN 8th Street LLC ("BHNWN Defendants").

14. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

15.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

16.     At all times relevant herein, the individual police officer defendants and John and Jane Doe 1 through 10 were acting under color of state law.

## STATEMENT OF FACTS

**Relevant Background**

17.     Mr. Gordon purchased the real property known as 234 8th Street in Brooklyn, New York (the "Property") on or about April 15, 1998.

18.     On or about November 29, 2006, Mr. Gordon transferred ownership of the Property to a New York corporation in which he was majority shareholder, 234 8th Street Corp.

19.     On or about September 10, 2009, unbeknownst to Mr. Gordon, the holder of a mortgage note on the Property, FTBK Investor, LLC ("FTBK"), commenced a foreclosure action in Kings County Supreme Court under docket number 22055/2009.

20.     FTBK failed to timely serve Mr. Gordon or file notice of pendency in accordance with the CPLR and RPAPL.

21.    In fact, FTBK led Mr. Gordon to believe that it was actively considering pursuing additional real estate deals with him at the same that it was commencing and pursuing the foreclosure proceeding regarding the Property.

22.    As a result, Mr. Gordon was unaware that the foreclosure action had been commenced until after default had been entered against his corporation, a receiver had been appointed for the Property and a referee had scheduled a foreclosure auction.

23.    In addition to the absence of fair notice to him regarding the proceedings, Mr. Gordon had numerous meritorious defenses to the foreclosure action including, *inter alia*, errors in the judgment amount and lack of standing.

24.    As soon as he became aware of the foreclosure proceedings and the scheduled auction in April 2013, Mr. Gordon conferred with counsel and took immediate action.

25.    234 8th Street Corp. petitioned for voluntary bankruptcy in the Eastern District of New York under docket number 13-BK-42244 (CEC).

26.    As a result of the bankruptcy, an automatic stay was imposed, the receiver was discharged, the foreclosure auction was cancelled, the Property became an asset of the bankruptcy, and Mr. Gordon's corporation, 234 8th Street Corp., was returned to the status of debtor-in-possession.

27.     In the bankruptcy proceeding, the automatic stay was lifted by order dated December 13, 2013.

28.     Mr. Gordon learned that an auction of the property was scheduled for February 20, 2014, and planned to bid for the Property.

29.     When Mr. Gordon and other interested potential bidders contacted the referee handling the auction on the day before and morning of the auction, they were told that it had been cancelled.

30.     The auction in fact took place, and defendant BHNWN 8th Street LLC purchased the Property for less than fair market value.

31.     As of March 5, 2014, Mr. Gordon was not aware that BHNWN 8th Street LLC had won the auction (or even that an auction had taken place), had every intention of maintaining control over the Property and was its sole owner.  Indeed, Mr. Gordon was in the process of renovating the Property at that time.

32.     In order to conduct due diligence on its auction purchase prior to closing on the Property, BHNWN 8th Street LLC needed to conduct an inspection of the premises.

33.     Neither BHNWN 8th Street LLC, nor any of its agents, the BHNWN Defendants, ever contacted Mr. Gordon or sought permission from him to enter the premises.  Mr. Gordon alone had authority to allow such an inspection at that time.

-6-

34.     Instead, as detailed below, on March 5, 2014, the BHNWN Defendants surreptitiously entered and trespassed onto the Property for the purposes of conducting an inspection that they had every reason to expect Mr. Gordon would not permit.

35.     Following the events described below, and having successfully conspired with NYPD officers to have Mr. Gordon falsely arrested, the BHNWN Defendants were left in the Property alone to conduct the inspection at their leisure.

36.     Following its inspection of the Property by the BHNWN Defendants, BHNWN 8th Street LLC successfully closed on the transaction and took deed to the Property from the referee in April 2014.

37.     Even though BHNWN 8th Street LLC had won the auction, it and the BHNWN Defendants had no right of entry to the Property before the closing with the referee had occurred.

38.     Litigation surrounding the propriety of the auction process and the legitimacy of the foreclosure proceedings is ongoing.

39.     By Notice of Appeal to the Second Department of the New York State Appellate Division filed on or about June 26, 2015, Mr. Gordon and other potential bidders on the property who allege they were misled by the referee have sought to vacate the default judgment in the foreclosure action and to unwind the auction and

the resulting sale of the Property.

**The False Arrest of Nick Gordon**

40.     At approximately 12:30 p.m. on March 5, 2014, Mr. Gordon arrived at the Property with a real estate agent (the "agent") to show a unit to a prospective tenant.  An employee responsible for day-to-day management of the Property was also present (the "manager").

41.     Upon entering the Property, Mr. Gordon, the agent and the manager encountered the BHNWN Defendants, who were strangers to them.

42.     When the BHNWN Defendants refused to identify themselves or vacate the Property, Mr. Gordon called 911 to report the trespass.

43.     In his call to 911, in addition to reporting the trespass, Mr. Gordon informed the operator that one of the men had pushed him.

44.     As witnessed by both the agent and the manager, Mr. Gordon did not lay a hand on any of the BHNWN Defendants, despite the fact that one of them had pushed him.

45.     While Mr. Gordon was on the phone with 911, the BHNWN Defendants ran into an apartment under construction and locked themselves in.

46.     Audio recordings exist of calls the BHNWN Defendants made to 911 after locking themselves in the apartment uninjured:

| | |
|---|---|
| 911 Operator: | Sir, what is going on, what is the emergency there? |
| BHNWN Caller: | This guy is beating everybody up… |
| | *      *      * |
| 911 Operator: | Any weapons? Any injuries, sir? |
| BHNWN Caller: | I don't know. I'm injured, yeah.  He beat me. |
| 911 Operator: | He beat you? You need EMS? |
| BHNWN Caller: | No, I don't need EMS.  But he is beating me, I need help. |
| 911 Operator: | Sir, he is beating you and you are talking to me at the same time? |
| BHNWN Caller: | Yes. |

47.     Some time later, the defendant police officers ("Officer Defendants") arrived.

48.     Mr. Gordon truthfully explained to the officers that he was the Property's owner and the men were unknown trespassers who had barricaded themselves inside an apartment on the second floor.

49.     At that time, the agent also told the Officer Defendants what had happened, corroborating Mr. Gordon's account of the events.

50.     During their conversation, one of the Officer Defendants asked Mr. Gordon, in sum and substance, if he had ever been "locked up" before.

51.     Mr. Gordon truthfully responded that he had been arrested on a prior occasion, that it had been a false arrest, and that he had a pending lawsuit regarding the arrest.

52.     The officer responded, in sum, "oh, you like making complaints against the police?"

53.     The case Mr. Gordon was referring to was *Gordon v. City of New York, et al.*, 14 CV 1432 (JBW) (RML), which was in fact pending at that time and subsequently settled.

54.     The Officer Defendants then spoke to the BHNWN Defendants, who had no visible signs of injury.

55.     It was during this conversation with the BHNWN Defendants that the Officer Defendants, knowing – by the clear weight of the evidence before them – that Mr. Gordon was not guilty of any assault, determined that Mr. Gordon would be arrested at the BHNWN Defendants' urging, even though there was not even arguable probable cause to support any charges.

56.     The Officer Defendants took no steps to investigate the credible allegations of trespass and assault presented by Mr. Gordon and the agent.

57.     When the Officer Defendants returned to Mr. Gordon, they refused to even listen to the corroborating account of the manager, another disinterested witness who was prepared to truthfully provide his eyewitness account of the disputed events.

58.     Without further discussion or investigation, the Officer Defendants then placed Mr. Gordon in handcuffs and took him from the Property to a police precinct.

59.     The BHNWN Defendants refused medical attention at the scene and, upon information and belief, never sought medical attention for any purported injuries.

60.     Even though the BHNWN Defendants had suffered no injury and had no signs of injury, the Officer Defendants prepared false police reports and made false statements to prosecutors claiming that one of the BHNWN Defendants had sustained, *inter alia*, redness of the face.

61.     Based on the false statements of the Officer Defendants, made at the behest of the BHNWN Defendants and intended to punish Mr. Gordon for having pursued a false arrest case against their fellow NYPD officers, prosecutors filed assault charges against Mr. Gordon. Plaintiff was charged with violating N.Y.P.L. § 120.00, Assault in the 3rd Degree, an A Misdemeanor offense punishable by up to a year in jail.

62.     Mr. Gordon was eventually taken from the police precinct to Brooklyn Central Booking.

63.     Plaintiff was arraigned in Kings County Criminal Court and, after approximately twenty-four hours in custody, he was ultimately released.

64.     Mr. Gordon retained private counsel and, after several court appearances, the criminal charges were dismissed.

65.     Mr. Gordon suffered damage as a result of defendants' actions.  Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, pecuniary and property loss, loss of business opportunities and damage to his reputation.

## FIRST CLAIM
### Malicious Prosecution

66.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

67.     The individual defendants are each liable on plaintiff's malicious prosecution claim.

68.     The Defendant Officers, in a joint effort with the BHNWN Defendants, initiated a prosecution of Mr. Gordon by presenting criminal allegations to prosecutors and swearing out a false criminal complaint and supporting deposition(s).

69.     The individual defendants lacked probable cause to initiate the prosecution because the BHNWN Defendants knew that Mr. Gordon had not committed a crime (and that they had) and the Officer Defendants lacked sufficient facts to support a finding of arguable probable cause and ignored Mr. Gordon's statements (and his own credible complaint of trespass by the BHNWN Defendants) and those of his two eyewitnesses, along with the lack of of physical injuries and the

motive for fabrication inherent in the disputed real estate transaction underlying the encounter itself.

70.     Malice can be inferred from the absence of probable cause, and can also be established independently by the wrong and improper ends being sought by each of the individual defendants, and their desire to see something other than the ends of justice served; to wit, the Officer Defendants were motivated by a desire to retaliate against Mr. Gordon and punish him for his prior lawsuit, which is evidenced by their statements at the scene; and the BHNWN Defendants' obvious motivation to have Mr. Gordon removed from the Property so that they could complete their unauthorized inspection of it.

71.     The criminal charges against Mr. Gordon were dismissed, which is a favorable termination.

72.     Mr. Gordon was compelled to attend criminal proceedings in connection with the prosecution, which satisfies the requirement of a post-arraignment deprivation of liberty.

73.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

## SECOND CLAIM
### State Law Malicious Prosecution

74.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

75.     By their conduct, as described herein, the BHNWN Defendants are liable to plaintiff for having committed malicious prosecution under the laws of the State of New York.

76.     The BHNWN Defendants maliciously commenced criminal proceeding against plaintiff, charging him with, *inter alia*, assault.   The BHNWN Defendants falsely and without probable cause charged plaintiff with violations of the laws of the State of New York.

77.     The commencement and continuation of the criminal proceedings against plaintiff was malicious and without probable cause.

78.     All charges were terminated in plaintiff's favor.

79.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

### THIRD CLAIM
### Negligent Hiring, Training and Retention

80.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

81.   Defendant BHNWN owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

82.   Upon information and belief, all of the BHNWN Defendants were unfit and incompetent for their positions.

83.   Upon information and belief, defendant BHNWN knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

84.   Upon information and belief, defendant BHNWN's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

85.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

-15-

## FOURTH CLAIM
### Intentional Infliction of Emotional Distress

86.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

87.     By reason of the foregoing, the defendants, acting individually and, as employees and/or agents and/or shareholders of BHNWN, and within the scope of their duties, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiff.

88.     The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

89.     Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiff. Defendant BHNWN is responsible for their wrongdoings under the doctrine of *respondeat superior*.

90.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Negligent Infliction of Emotional Distress

91.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

92.    By reason of the foregoing, the BHNWN Defendants, acting individually and in their capacities as employees, agents and/or shareholders of BHNWN, and within the scope of their duties, each were negligent in committing conduct that inflicted emotional distress upon plaintiff.

93.    The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

94.    Defendant BHNWN and the BHNWN Defendants were responsible for the negligent infliction of emotional distress upon plaintiff.   BHNWN is responsible for their wrongdoings under the doctrine of *respondeat superior*.

95.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Conspiracy

96.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

97.     The BHNWN Defendants and the Officer Defendants agreed to violate provisions of the state and federal constitution and arrest and prosecute Mr. Gordon in the absence of arguable probable cause.

98.     The individual defendants took several overt acts in furtherance of their agreement, including the fabrication of evidence and the making of false statements to prosecutors.

99.     These acts resulted in a violation of plaintiff's rights to due process and to be free from unlawful search and seizure.  Mr. Gordon was deprived of his liberty and forced to defend against false criminal charges while facing the prospect of incarceration if he were convicted.

100.    Accordingly, defendants violated the Fourth and Fourteenth Amendment because they conspired to deprive Mr. Gordon of his rights.

101.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Failure to Intervene

102.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

103.   Those Officer Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

104.   Accordingly, the Officer Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

105.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Tortious Interference with Contract

106.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

107.   The BHNWN Defendants had knowledge that Mr. Gordon was undertaking efforts to renegotiate his mortgage, unwind the foreclosure and set aside the auction.

108.   The BHNWN Defendants, by their conduct as described above, interfered with a prospective economic advantage due to plaintiff.

109.   The BHNWN Defendants knew that, prior to closing with the referee, only Mr. Gordon could grant access for the purposes of an inspection.

110.   The BHNWN Defendants knew that Mr. Gordon would not permit access for that purpose.

111.   The BHNWN Defendants knew, at the time they entered the Property, that they were not authorized to be there and were trespassing.

112.   Had the BHNWN Defendants not entered the Property without authority to conduct an illicit inspection, BHNWN 8th Street LLC would have been unable to close on its purchase of the Property.

113.   Mr. Gordon would have then had the opportunity to renegotiate his existing mortgage and/or otherwise maintain control of the property pursuant to his existing contract.

114.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants and BHNWN 8th Street LLC, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:  October 31, 2016
     New York, New York

     HARVIS & FETT LLP

     _____
     Gabriel Harvis
     Baree N. Fett
     305 Broadway, 14th Floor
     New York, New York 10007
     (212) 323-6880
     gharvis@civilrights.nyc

     *Attorneys for plaintiff*