```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   NICK GORDON,                       :
                                        :  15-CV-02439 (CBA)
 5                    Plaintiff,        :
                                        :
 6              v.                      :  225 Cadman Plaza East
                                        :  Brooklyn, New York
 7   CITY OF NEW YORK, et al.,          :
                                        :  June 26, 2017
 8                    Defendants.       :
     ------------------------------------X
 9

10        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE VERA M. SCANLON
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   The Plaintiff:            NICK GORDON, Pro Se
                               1876 Bleeker Street
14                             Flushing, New York 11385

15   For the City of New York: ANGHARAD K. WILSON, ESQ.
                               New York City Law Department
16                             Corporation Counsel
                               100 Church Street
17                             Suite #3-173b
                               New York, New York 10007
18
     For the Defendants:       H. JONATHAN RUBINSTEIN, ESQ.
19                             The Feinsilver Law Group, P.C.
                               215 Millburn Avenue
20                             Millburn, New Jersey 07041

21
     Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
22                             TypeWrite Word Processing Service
                               211 North Milton Road
23                             Saratoga Springs, New York 12866

24


25



     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

2

1   (Proceedings began 12:34 p.m.)

2             THE COURT:  All right.  This case is *Gordon v. City*

3   *of New York*, 15-CV-2439.  Let's start with everyone's

4   appearance, so first plaintiff.

5             MR. GORDON:  Nicholas Gordon, *pro se*.

6             THE COURT:  Okay.  And for the City defendants.

7             MR. WILSON:  Angharad Wilson.

8             THE COURT:  And for the other defendants.

9             MR. RUBINSTEIN:  H. Jonathan Rubinstein of The

10  Feinsilver Law Group, P.C., Your Honor.

11            THE COURT:  All right.  This case has been around

12  for a while.  Where are you all in terms of getting discovery

13  completed and moving towards a conclusion here?

14            MS. WILSON:  Oh, I guess --

15            THE COURT:  City defendants, sure.

16            MS. WILSON:  That probably goes to me.  Well, we --

17  so I believe that at the last conference which was on

18  February 15th plaintiff was given a deadline of March 27 to

19  find and retain new counsel.  We emailed him on April 3, 2017,

20  asking him to advise us of his new counsel if we found any.

21  On April 7th he replied saying that he had not found any new

22  counsel but that he was meeting with someone in the near

23  future at that point.  So we served -- we served discovery

24  demands on May 4th, 2017, and then -- and also served

25  plaintiff with a notice of deposition for May 18th.  That

3

1   deposition was cancelled on May 16th.  I did not speak to

2   Mr. Gordon, but my co-counsel advises me that Mr. Gordon

3   evidently had oral surgery on that date or that's what he told

4   Mr. Brocker.

5          And then we resent a new notice of deposition on

6   June 15th for this July 17th by mail and email.  And our cover

7   letter also noted the fact that we had not yet received any

8   responses to the written discovery and advised plaintiff that

9   if we did not receive such responses by July 5th we would move

10  the court to compel him for sanctions.

11         THE COURT:  All right.  How about the other

12  defendants and like Mr. Gordon?

13         MR. RUBINSTEIN:  My recollection is I'd gotten my

14  discovery responses from adversary counsel.

15         THE COURT:  Um-hum.

16         MR. RUBINSTEIN:  Before he [indiscernible] the case

17  but we also want to take Mr. Gordon's deposition.

18         THE COURT:  You want to do it in tandem with the

19  City on 7/17 date?

20         MR. RUBINSTEIN:  Yes, Your Honor.

21         THE COURT:  All right.  Mr. Gordon, what's going on?

22         MR. GORDON:  I went through several attorneys.  I

23  have one gentleman -- a lot of attorneys, like you said, that

24  if you -- the last time we were here that there's only a few

25  sure -- and the type of attorneys that handle this type of

4

1   cases.  So this attorney is -- name is T. J. Banks.  He

2   wanted -- first he was going through -- doing a trial, then he

3   wanted to go through all the documents.  I meet with him on

4   this Friday.  I think he's the one that I'm going to -- I --

5   put it this way, I think he's the one that's -- I'm going to

6   choose to be my attorney because he was a DA at one point for

7   20-some years, so he knows the system pretty well to a certain

8   degree.  And also he's a real estate -- because a lot of --

9   this is something to do with real estate and also what

10  happened to me with the situation.

11          So again, they want my deposition said on July 15th.

12  Is that correct?

13          THE COURT:  17.

14          MR. GORDON:  Oh, 17?  I would -- I wouldn't know

15  till Friday if he's available for that date.  I think maybe he

16  might be.  I'm not sure.  But again, he has to first present

17  himself on the system and everything else with that.

18          So is it possible maybe to get like a -- like the 15

19  days' extension after that if possible because I don't want to

20  put him in a spot because then he's not ready and then it just

21  confuses everything.

22          THE COURT:  So that first point is apparently from

23  May you have demands from the City for documents.  Did you get

24  those?

25          MR. GORDON:  They did send me them, yes, she did.

5

1          THE COURT:  So is there a reason you didn't respond
2   to them?

3          MR. GORDON:  Two things.  Again, I -- going back to
4   the attorney, was going to give them the documents and then
5   because again I'm *pro se* I've never did this before, so that's
6   the reason why I didn't really send it to him.  I figured
7   maybe the attorney will handle it and, you know, move forward
8   on it but it didn't work out that way.  So I was just
9   wondering, you know, that's exactly what happened.

10         A lot of attorneys I believe were not -- they don't
11  like taking a case that's -- another attorney had, which is
12  really -- you know, I never, you know, experienced that but
13  that's how it is in this situation.

14         THE COURT:  So you're meeting with Mr. Banks.  Do
15  you have any kind of commitment from him or he's going to let
16  you know what his decision is about whether he wants the case
17  or whether you --

18         MR. GORDON:  No, he --

19         THE COURT:  -- [indiscernible] --

20         MR. GORDON:  I'm sorry to interrupt.  I'm about 100
21  percent sure I'm going to have him.

22         THE COURT:  Um-hum.

23         MR. GORDON:  I just wanted to go through the
24  documents.  He went through the system already.  He wanted --
25  he was going through what happened with the real estate

6

1  transaction at that time, but he's really the only guy at this

2  point that I'm 100 percent sure that I'm going to have him on

3  board.

4          THE COURT:  Right.  But there's the other -- does he

5  want to take the case?

6          MR. GORDON:  Yes, he does.

7          THE COURT:  Okay.

8          MR. GORDON:  Yes.

9          THE COURT:  Okay.  All right.  So I think it makes

10  sense to set some new interim deadlines that would apply

11  either to you or to Mr. Banks, whoever is handling the case.

12  It's just -- and so there are a couple steps.  There's

13  responding to the demands that you -- that you received which

14  you should pass on to your lawyer and providing the documents

15  for the interrogatories as well.

16          MS. WILSON:  Yes, there were, Your Honor.

17          THE COURT:  So answering the statement or --

18  answering the questions with whatever your sworn statement is

19  to those interrogatories.  And then, you know, counsel most

20  often wants the documents before doing the deposition.

21          MR. GORDON:  Right.

22          THE COURT:  So assuming he's starting the end of the

23  week, next week, something like that, give you till the 21st

24  to respond to their document requests and interrogatories.

25          MS. WILSON:  And Your Honor?

1          THE COURT:  Um-hum.

2          MS. WILSON:  We would also ask for an order that

3    plaintiff has waived all his objections and his responses.

4          THE COURT:  I'm not going to do that.  I don't know

5    what his -- don't know what the question were, don't know what

6    the objections might be, and your lawyer should know they need

7    to be very narrowly tailored objections if there are any.  But

8    should provide the documents and their responses by July 21st

9    and if you're asking for documents he should issue those by --

10   well, I guess, Mister -- I'm sorry.  The previous counsel

11   already asked for --

12         MS. WILSON:  He did in fact --

13         THE COURT:  -- information and you responded?

14         MS. WILSON:  -- and he did actually -- he did

15   actually request them prior to the stay of discovery that

16   Judge Amon ordered during the pendency of the motion to

17   dismiss in this case, so --

18         THE COURT:  And they were answered?  You did answer?

19         MS. WILSON:  We've already responded.

20         THE COURT:  Okay.

21         MR. GORDON:  Probably have it.

22         THE COURT:  So you have the file.  You should pass

23   it on to him.

24         And then with your deposition I'll just -- it should

25   happen pretty expeditiously.  I don't know what anyone's

8

1   schedule is.  I would say --

2          MR. RUBINSTEIN:  Your Honor, I've got a very

3   difficult --

4          THE COURT:  -- this is a month after the

5   documents --

6          MR. RUBINSTEIN:  I'm sorry.  I have a very difficult

7   August.  I have a two-week arbitration scheduled to begin in

8   the second week of the month and I'm hoping to get away the

9   last week of the month.

10         THE COURT:  So does that mean you want to do it the

11  first week of the month?

12         MR. RUBINSTEIN:  That's fine with me, Your Honor.

13         THE COURT:  All right.

14         MR. RUBINSTEIN:  I know I also have a doctor's

15  appointment on August 2nd which I can't miss.

16         THE COURT:  Okay.  Does the first week work for you?

17         MS. WILSON:  I believe so, Your Honor.  I would also

18  like to just briefly raise the point that we -- that we

19  believe the plaintiff should still consider withdrawing his

20  case against the City of New York.

21         THE COURT:  Um-hum.

22         MS. WILSON:  Most of his claims are barred by a

23  global release that he signed in the prior settlement with the

24  City of New York and we don't believe that there is any --

25  that there are any damages attributable to the motions

9

1  prosecution claim given that he was prosecuted on a

2  superseding complaint that was exclusively sworn to by the

3  complaining witnesses, not by any of the -- any of the

4  individual defendants from the City.  And there's no Monell

5  claim.

6          THE COURT:  All right.  We've kind of went over this

7  before.  Your lawyer should be aware of it.  And the City is

8  raising the point I think is unstated, but what will happen in

9  an objection is if the claims are dismissed, you know, at the

10  next motion stage they're going to move for costs and maybe

11  sanctions.

12          MS. WILSON:  I'm certain that's correct.

13          THE COURT:  So --

14          MS. WILSON:  I mean, at least for costs.

15          THE COURT:  If there's no legal basis, which

16  obviously is the conversation you're going to have with your

17  lawyer with the claims against the City, not against the other

18  defendants, they just want to make clear their position.

19          MR. RUBINSTEIN:  Your Honor, I would say that my

20  clients feel the same way about the claims raised against them

21  for the matters that -- for the reasons we discussed at length

22  in the past.

23          MR. GORDON:  Can I speak?

24          THE COURT:  Sure.

25          MR. GORDON:  Going back it's really not -- nothing

1   to do with any money issue here.  It's really the principle.

2   And I want to be clear the last time because a release was

3   signed since you've brought it up I was in lock down for no

4   reason and the reason was I didn't want to settle.  Even the

5   judge called me when I was in Greece [ph.] and I told him it's

6   not the principle.  He says, "I agree.  It's unbelievable."

7   So I did it as a courtesy.  But it's not the point of the

8   money and I just want to be clear with that.  And the release

9   had nothing to do what happened here.  The key point I want to

10   say to you is that the police had an obligation.  You can't

11   just go by one or two people's opinion that somebody did this

12   and lock them up.  You should investigate what really

13   happened, especially if the person wasn't the owner of the

14   building at that time and there were trespass at the building.

15        So -- and -- oh, the key point to get back to what

16   you just said, one thing that I keep in my head which has kind

17   of really bothered me for all the time, the lieutenant or --

18   came to me and says, "I'm the -- I'm the one who called the

19   cops.  I'm the one who, you know, made the phone call to the

20   cops."  And he came to me, "Have you been locked up before?"

21   and he says to me, "Yeah, I got locked up for cops

22   [indiscernible] false arrest and I have a court case at that

23   time."  So like making complaints against cops.  And then the

24   detective went inside, talked to these guys a couple of times.

25   And then he comes back.  He says, "Turn around, going to lock

11

1  you up."

2          Now, you should do your diligence.  You just can't

3  lock people up.  And do their job and say because somebody

4  says this it's okay.  "I'm going to call the cops"; that's my

5  whole problem here.  And it's just doing your job is the key

6  here -- and that's a lot of lawyers -- this T. J. said I have

7  a point.  You've just got to do your diligence before

8  investigate.  You know, get into it.  See how -- who are these

9  guys?  How did they get in here?  I didn't touch them.  And

10 they just roll around the floor and they put dust [ph.] on

11 them said I touched them and --

12          THE COURT:  Okay.

13          MR. GORDON:  -- then [indiscernible] --

14          THE COURT:  But we already went through it in the

15 settlement effort --

16          MR. GORDON:  Yeah, I'm sorry.

17          THE COURT:  -- but if I recollect correctly the

18 City's point or the City defendants is two-fold.  One at some

19 point you signed a document that's a release so you've said

20 you're not going to bring these claims.  Do you have a copy

21 with you or --

22          MS. WILSON:  Well, I'm sorry I don't.

23          THE COURT:  Okay.  So that's not a question of

24 anything about the merits.  That's a question about what other

25 kind of agreement you've made with regard to going ahead with

12

1   claims against defendants.

2           MR. GORDON:  Right, but the release -- my prior

3   attorney, he was aware of that.  He said this has nothing to

4   do -- that has nothing to do with this case.  That's what he

5   said to me.  Anyway, we don't want to get into it.  We'll find

6   out with deposition we'll get into all that.

7           THE COURT:  But it's not a question, I don't think,

8   of a deposition.  The question is, what does the document says

9   and it's essentially a contract and the City is offering the

10  position that that contract covers this case so --

11          MR. GORDON:  What's --

12          THE COURT:  -- they're raising the point.

13          And the other point that was made, which I -- you

14  know, we've talked about this many times and this is really

15  just to remind you is you may not like the law.  I hear it in

16  many cases.  People think it's unfair that the police can make

17  a decision and, you know, what you're describing is doing your

18  job or doing due diligence, but the law generally says it's

19  reasonable.  There are some exceptions, but generally it's

20  reasonable for the police to rely on the complaining witnesses

21  or people who claim to be victims because it's not -- like

22  police are not out in the street being, as they say, judge and

23  jury.  They're there to do many jobs, but essentially on this,

24  you know, do the basic investigation, decide if someone should

25  be arrested, start the process, and then the DA takes over and

13

1  the decisions are made based on, you know, much more involved

2  investigations.

3          And so, you know, that the police are responsible

4  particularly for an arrest when there's a complaining

5  witnesses or complaining victims, it's not the law.  And so

6  that's the point that the City's lawyer is making that that

7  happened here.  You know --

8          MR. GORDON:  Right.

9          THE COURT:  -- I -- you know, we've talked a lot

10  about it in the settlement discussions --

11          MR. GORDON:  Right.

12          THE COURT:  -- about whether it was reasonable,

13  whether the people who were complaining were thinking it,

14  whether they -- you know, you called and how did you end up

15  being the person arrested, but --

16          MR. GORDON:  And there were other witnesses

17  [indiscernible].

18          THE COURT:  But the point is --

19          MR. GORDON:  Anyway.

20          THE COURT:  -- only that what happens in the street

21  or in the building right at the event, you know, is a very

22  limited picture of all of the pieces.  But the police are not

23  asked to do on the scene, on the -- like a, you know, super

24  quick, figure the whole case out.  They are allowed to work

25  with limited information and if people are willing to, you

14

1   know, report to the police that certain things happened that

2   would be unlawful and stand by that, at least before the

3   police and the police are entitled to rely on it, you know,

4   and that's why obviously you have these other folks saying

5   that they should be involved in it because they did something

6   wrong.

7         But, you know, there's a little bit of an

8   inconsistency.  It raised the question, did the various

9   defendants cooperate.  But another view, one of many here, is

10  that the police relied on the defendants.

11        MR. GORDON:  Your Honor, you're 100 percent right on

12  that.  But the -- you know, as [indiscernible] would say, the

13  lieutenant to me was biased because I told him I had another

14  case that I was arrested, false arrest.  And that's the words

15  that's in my head.  He said, "Oh, you like making

16  [indiscernible] cops."  I said, "What do you mean?"  And then

17  ten minutes later I'm turned around [indiscernible].

18        THE COURT:  There's an important principle which is

19  when you're making a claim about false arrest and the fourth

20  amendment, if the police officer subjectively for whatever

21  reason doesn't like you subject -- you know, because whatever.

22        MR. GORDON:  Correct.

23        THE COURT:  You know, you're wearing a pink shirt,

24  you're --

25        MR. GORDON:  Right.

1          THE COURT:   You know, you're a Mets fan, whatever it

2    is.   If the police officer has also an objectively reasonable

3    basis to make the arrest it doesn't matter about the

4    subjective side.   So, you know, depending on how you're

5    framing it, but under the Fourth Amendment it doesn't matter.

6    So he could have said what he said -- I don't want to

7    [indiscernible] you know, with more facts there's not some

8    kind of argument to be made, but just so you understand the

9    general principles.   So this is why from the City's

10   perspective you shouldn't continue to sue them.

11          And what they're saying is, at some point it's

12   absurd, ridiculous, unfair, whatever that they have to keep

13   litigating something when there's no -- either there's no

14   legal basis like the Fourth Amendment point or there's a

15   completely valid defense which they've now told you about that

16   you should deal with.   That's their view.   And I say absurd or

17   unfair because the point is at the extreme and, you know,

18   there's some law that would say -- I'm speaking colloquially,

19   but when you get to that, the outer limits, then it's

20   reasonable for the City to say, look, it cost us money.   This

21   isn't fair.   You should have to give them, you know, back the

22   money that they end up spending on this.

23          So, you know, this -- the point is you can't come

24   along a couple months from now and say, I didn't know that,

25   you know.   That's their position.

1          MR. GORDON:  I understand.

2          THE COURT:  Not saying whether they're right or

3   wrong.  I'm saying these are the arguments that are going to

4   be raised, so --

5          MR. GORDON:  If we have no claim to them, we'll be

6   happy -- I'll be happy to --

7          THE COURT:  Well --

8          MR. GORDON:  -- take them off the case at that time,

9   but when I --

10         THE COURT:  The point is sooner rather than later so

11  the City doesn't keep spending money.  So, look, it's

12  something for you to talk about with your lawyer, for your

13  lawyer to look at the evidence, look at the documents

14  particularly about release, you know, and it really depends on

15  the various specific texts of the release.  Sometimes they're

16  broadly drafted; sometimes they're narrowly drafted; sometimes

17  there's exceptions carved out.  I don't know what this one

18  says.

19         MR. GORDON:  But the release was signed when this

20  case was still -- just popped in, so I -- I'm -- if this case

21  was still on and the lease was signed, you in that middle --

22  so I think this -- that's what --

23         THE COURT:  I don't know --

24         MR. GORDON:  I don't know the whole deal -- I don't

25  have everything in front of me.

1          THE COURT:  Do you know?

2          MS. WILSON:  I believe that it was signed -- that

3     the release was signed after plaintiff's arrest and prior to

4     the conclusion of the criminal prosecution.  But there was no

5     carveout for --

6          THE COURT:  Okay.

7          MS. WILSON:  -- this case.

8          THE COURT:  So generally --

9          MS. WILSON:  [Indiscernible] --

10         THE COURT:  Go ahead.

11         MS. WILSON:  I apologize.  I believe that that's

12    also why plaintiff's original counsel never raised a claim of

13    false arrest in this matter.  I think it's because of the

14    general release.

15         MR. RUBINSTEIN:  Your Honor, I made a request for it

16    as part of my discovery and I have not seen the release.  I

17    would like someone to produce a copy for me if that's

18    possible.

19         MS. WILSON:  That would be no problem.

20         MR. RUBINSTEIN:  Thank you.

21         THE COURT:  Okay.

22         MR. RUBINSTEIN:  Okay.

23         THE COURT:  All right.  Let's fill in a few more

24    dates.  All right.  So the responses for the document request

25    and the interrogatories are due by July 21st.  So, look, if

18

1    Mr. Banks takes the case you should talk to him.  He'll know

2    the dates.  He can handle it.  If not, you have to provide the

3    information.  And just so you understand the path of this

4    could go down if you don't respond the City may, as counsel

5    has suggested, make a motion to compel.  If you don't have a

6    good reason for not having responded, then you'd be ordered to

7    respond.  And if you failed the order to respond then the

8    follow-up is to make a motion to dismiss the case because the

9    thought is each side should have that information that's

10   needed to pursue the case, so that's where that will go.

11           And then your deposition should be taken by --

12   during the week of July 31st, except for the 2nd.  Counsel is

13   not available.  And then from the defendant's side is there

14   any other discovery?

15           MS. WILSON:  I don't believe so, Your Honor.

16           THE COURT:  Okay.  So, you know, you can give your

17   attorney until the end of September to finish the fact

18   discovery, so that's July -- I'm sorry, not July --

19   September 29th.  So -- and then --

20           MR. RUBINSTEIN:  Excuse me, Your Honor.

21           THE COURT:  Um-hum.

22           MR. RUBINSTEIN:  Based -- depending on how

23   Mr. Gordon testifies at his deposition I may want to depose

24   one or two of the other fact witnesses that you referenced.

25           THE COURT:  Okay.  We should get it scheduled for

1   September.  I would say August 6th if you had a busy schedule.

2          All right.  So then you have Judge Amon so you've

3   already done this before, but she wants a pre-motion

4   conference letter so that should be served by October 27th.

5   So basically defendants will say to the trial judge there are

6   legal reasons or maybe factual.  I'm going to say legal

7   reasons why this should not go forward and they'll explain

8   that in a letter to the trial judge by October 27th.  You or

9   your lawyer can respond.  If for some reason that doesn't

10  happen, although I think it will in this case, you could do a

11  joint pretrial order by November 30th if you -- that's only if

12  there's no motion practice.

13          Do you understand?  So basically the case

14  [indiscernible] they challenged it, some of the cases going

15  forward.  There's supposed to be an exchange of information.

16  That's the period we're in now.

17          Then defendants -- sometimes the plaintiff, but in

18  this kind of case almost only the defendants do it, they say

19  the trial judge can deal with the case and dismiss the claims,

20  we'll see what happens.  If for some reason that motion

21  doesn't happen, which would be highly unlikely here, you

22  should get ready for trial.

23          MR. GORDON:  Okay.

24          THE COURT:  But I think there will be motion

25  practice.

20

1          MR. GORDON:  So all the things will be eligible

2  beyond the --

3          THE COURT:  Yeah, they'll be in this order.  So let

4  me just make sure.  Is your address still the Bleeker Street

5  address?

6          MR. GORDON:  Yeah, you can send it there.

7          THE COURT:  Okay.  All right.  Are there other

8  issues?

9          MS. WILSON:  None from the City, the defendant's

10  perspective.

11          MR. RUBINSTEIN:  Not from the military defendants,

12  Your Honor.

13          THE COURT:  Okay.  So you'll get a copy in this

14  order, but you should really give it to Mr. Banks.  He'll be

15  able to look it up but, you know, these deadlines would affect

16  his scheduling, too.  All right.  So there'll be a date

17  sometime in mid-September to just come back here, see where

18  you all are at, and talk about wrapping it up and what the

19  motion practice is going to be about.  Okay.  Thank you.

20          MR. GORDON:  Thank you.  I appreciate it.

21          THE COURT:  Have a good summer.  Bye.

22  (Proceedings concluded 1:00 p.m.)

23                      * * * * * * * *

24

25

21

1         I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4                                  _____

5                                  _____

6                                  Ruth Ann Hager, C.E.T.**D-641

7    Dated:   July 19, 2017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25