UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

NICK GORDON,

                Plaintiff,

   -against-

POLICE OFFICER FRANCK EMMANUEL,
Shield No. 21633; POLICE OFFICER RAUL
DUENO, Shield No. 19800; LIEUTENANT
JOSEPH LAYNE; POLICE OFFICER
CORDERO, Shield No. 1289; BEHROOZ
BENYAMINI; ELIAS TAIED; BHNWN
8TH STREET LLC; ROBERT
AINEHSAZAN; and JOHN and JANE DOE
1 through 11, individually and in their official
capacities (the names John and Jane Doe
being fictitious, as the true names are
presently unknown),

                Defendants.

--------------------------------------------------------x



FILED
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 28 2018 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-2439 (CBA) (SJB)

**AMON, United States District Judge:**

      Plaintiff Nick Gordon brings the instant action against the Defendants, asserting Fourth

Amendment claims under 42 U.S.C. § 1983 and related state-law claims. (D.E. # 48.) The case

involves two groups of Defendants: (1) Police Officer Franck Emmanuel, Police Officer Raul

Dueno, Lieutenant Joseph Layne, Police Officer Cordero, and John and Jane Doe 1 through 11

(collectively, the "City Defendants"); and (2) Behrooz Benyamini, Elias Taied, Robert

Ainehsazan, and BHNWN 8th Street LLC (the "LLC") (collectively, the "non-City Defendants").

Gordon primarily contends that the City Defendants, who are all police officers, worked with the

non-City Defendants to prosecute him maliciously based on a May 5, 2014 incident at his property.

(See generally id.) The non-City Defendants bring state-law crossclaims against the City

Defendants, and Benyamini brings state-law counterclaims against Gordon. (D.E. # 56.)

The named City Defendants and non-City Defendants have filed motions for summary judgment on Gordon's claims. For the reasons stated below, the Court grants the motions in part and denies them in part. The Court also denies Gordon's request to reopen discovery.

## BACKGROUND

When parties file post-discovery motions, the Court ordinarily expects a bevy of evidence from which it may determine genuine issues of material fact. However, discovery issues in this case started to arise when Gordon was proceeding pro se, and those issues appear to have prevented the parties from amassing much admissible evidence. Gordon, now counseled, relies primarily on an affidavit he created to oppose the instant motions. For their part, the Defendants rely on several public records and an affidavit signed by Benyamini. Accordingly, the Court describes the relevant facts to the extent that it knows them from the admissible evidence in the summary judgment record. The Court "constru[es] the evidence in the light most favorable to" Gordon and draws "all reasonable inferences in [his] favor." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017).

### I. Procedural Posture

Gordon has filed two lawsuits in the Eastern District. On March 4, 2014, before filing the instant action, he brought a lawsuit against the city government and five police officers. See Gordon v. City of N.Y., No. 14-CV-1432 (JBW) (E.D.N.Y. filed Mar. 4, 2014). The Gordon case concerned an arrest not relevant to the instant matter. The city police again arrested Gordon on March 5, 2014, a day after he had filed the Gordon case; this case concerns the March 5 arrest. (See D.E. # 84-3, 84-5, 96-3, 96-4.) On this arrest, Gordon was arraigned on the charges of third-degree assault, third-degree attempted assault, third-degree menacing, and second-degree harassment. (See id.)

Three months later, on August 15, 2014, the city and Gordon reached a settlement in the

Gordon case. The Honorable Robert M. Levy, United States Magistrate Judge, consulted with

Gordon and found that the "agreement is knowing and voluntary." Gordon, D.E. dated Aug. 15,

2014. On September 8, 2014, the Honorable Jack B. Weinstein, United States District Judge,

ordered the dismissal with prejudice of Gordon's claims in light of the settlement. See id., D.E. #

20. In this action, the Defendants proffer a copy of a settlement-related release agreement, whose

authenticity Gordon acknowledges. (See D.E. # 84-6; see also D.E. # 88 ("Pl. Aff.") ¶ 58.) On

September 4, 2014, Gordon signed the following release for his $35,000 in settlement money:

> KNOW THAT I, NICK GORDON, . . . do hereby release and
> discharge defendants City [and the two named police officers in
> Gordon]; their successors or assigns; and all past and present
> officials, employees, representatives, and agents of the City of New
> York or any entity represented by the Office of the Corporation
> Counsel, . . . from any and all liability, claims, or rights of action
> alleging a violation of my civil rights and any and all related state
> law claims, from the beginning of the world to the date of this
> General Release, including claims for costs, expenses, and
> attorneys' fees.

(D.E. # 84-6.) Gordon told the Honorable Vera M. Scanlon, United States Magistrate Judge, in

this action that his counsel said the agreement "ha[d] nothing to do with" the claims against the

City Defendants here. (D.E. # 73 at 9:25–10:8.)

On November 10, 2014, the state court dismissed, pursuant to New York's speedy-trial

statute, the charges affiliated with Gordon's March 5, 2014 arrest. (D.E. # 84-5, 96-4; see also

D.E. # 103-2 at 7 (noting § 30.30 of the New York Criminal Procedure Law).) On April 29, 2015,

Gordon filed the instant action based on the prosecution. (D.E. # 1.) Gordon filed his First

Amended Complaint on August 20, 2015. (D.E. # 23.)

Discovery began smoothly; no parties raised issues, and Gordon responded to the non-City

Defendants' first set of interrogatories and documents request on October 20, 2016. (See D.E. #

45, 103-2). On January 12, 2017, Gordon issued his initial Rule 26(a)(1) discovery disclosures. (D.E. # 103-1.) And in April, Gordon sent discovery requests to the named City Defendants, who timely responded. (See D.E. # 73 at 7:10–23.)

However, the discovery process stalled when, on January 25, 2017, Gordon's counsel filed a letter seeking leave to withdraw, noting that Gordon "is current on his discovery obligations and there is ample time remaining in the schedule for replacement counsel to conduct depositions and prepare the case for trial." (D.E. # 62.) When Magistrate Judge Scanlon granted counsel leave, she extended discovery to July 31, 2017 because Gordon was seeking new counsel and proceeding pro se. (D.E. # 68.) In May and June, Gordon became non-responsive to discovery and deposition requests. (See D.E. # 73 at 2:23–3:6; D.E. # 76 at 1–2.) The named City Defendants moved for sanctions. (D.E. # 76 at 2.) On June 26, 2017, Magistrate Judge Scanlon denied the sanctions motion but ordered Gordon to respond to the interrogatories and documents request by July 21, 2017 and to appear for a deposition by August 4, 2017. (Id. at 7:2–7, 17:23–18:14; see also D.E. # 72.) Gordon did neither. (D.E. # 76 at 2.)

On September 9, 2017, the action was reassigned to the Honorable Sanket J. Bulsara, United States Magistrate Judge. (D.E. dated Sept. 9, 2017.) In a September 29, 2017 letter, the named City Defendants moved to compel discovery, detailing Gordon's numerous failures to attend his deposition or respond to the discovery materials. (D.E. # 76 at 2.) Magistrate Judge Bulsara denied without prejudice the named City Defendants' motion, describing it as procedurally defective and stating that he would consider properly filed compulsion and sanction motions later in the discovery period. (See D.E. # 108 at 8:24–15:4.)

On October 6, 2017, Magistrate Judge Bulsara said that he would stay discovery for two weeks so that Gordon could secure counsel. Magistrate Judge Bulsara emphasized that he was

not precluding Gordon from attaining counsel after the two-week deadline, but that "the case can't stop" and Gordon "has to go forward" with discovery after the deadline. (Id. at 7:21–23, 8:4–7.) Gordon acknowledged that he understood the warning. (Id. at 8:19.) Magistrate Judge Bulsara also granted one final discovery extension to December 22, 2017, and stated that he would not permit another one. (Id.) Four days after discovery had ended, Gordon notified the named City Defendants that he had retained new counsel. (D.E. # 78.) However, no counsel appeared on behalf of Gordon until January 28, 2018. (D.E. # 80.)

The named City Defendants filed their motion for summary judgment on January 29, 2018. (D.E. # 81.) The non-City Defendants filed their motion on March 23, 2018. (D.E. # 99.)

## II. Gordon's Affidavit

The discovery process resulted in a paucity of admissible evidence. On summary judgment, Gordon now relies primarily on his own affidavit, which explains his version of the events.[1] (See Pl. Aff.) The testimony from the March 11, 2018, affidavit largely tracks his pleadings. (Compare D.E. # 48, with Pl. Aff.)

The named City Defendants move to strike Gordon's affidavit as a discovery sanction, because he had failed multiple times to attend his own deposition and to respond to their discovery requests. (City Defs. Reply at 9 & n.4, D.E. # 98.) If the named City Defendants had additional discovery issues after Magistrate Judge Bulsara denied their discovery-related motions in October 2017, they should have presented a sanctions motion to Magistrate Judge Bulsara during those last few weeks. Under these circumstances, the Court declines to entertain their request. In any event,

---

[1] Gordon provides an unsigned declaration by a purported third-party witness, (D.E. # 90, 95), but the declaration fails to comply with 28 U.S.C. § 1746, which requires a showing that the declaration "is subscribed by" the declarant. The Court expressly gave an opportunity to Gordon to file a signed sworn declaration from the third-party witness, after Gordon had filed the unsigned version. (See D.E. dated Mar. 16, 2018.) On May 15, 2018, Gordon provided what appears to be the notarized last page of an affidavit by the third-party witness, but he failed to include the rest of the affidavit. (D.E. # 110.) The Court declines to consider this obviously incomplete document.

a "motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). The named City Defendants have not included such a certification.

In his affidavit, Gordon stated that he is the majority shareholder of the corporation owning 234 8th Street in Brooklyn (the "Property"), where police arrested him, and that the Property was improperly foreclosed and sold to the LLC. (Pl. Aff. ¶¶ 4–17.) Gordon testified that he was walking through the Property with two others on March 5, 2014 and that he encountered the individual non-City Defendants, who he claims "surreptitiously entered and trespassed" into the building. (Id. ¶¶ 21–23.) According to Gordon, he told the men that he would call 911, and one of them pushed him in response. (Id. ¶¶ 25–26.) Gordon said that he "did not lay a hand on any of the [individual non-City Defendants]," and that they had "no visible signs of injury." (Id. ¶¶ 27, 36, 52.) Gordon called 911, and the individual non-City Defendants "ran into an apartment under construction and locked themselves in." (Pl. Aff. ¶ 28.)

When the police arrived, Gordon and his two companions told the officers that he owned the Property and that "unknown trespassers . . . had barricaded themselves inside an apartment on the second floor." (Id. ¶¶ 31–32.) Gordon testified that, after he had told his story, one of the officers asked him, "in sum and substance, if [he] had ever been 'locked up' before." (Id. ¶ 33.) He mentioned being falsely arrested and bringing the Gordon lawsuit, to which the officer "responded, in sum, 'oh, you like making complaints against the police?'" (Id. ¶ 34.) Gordon claims that the police then spoke with the individual non-City Defendants, and that "[i]t was during this conversation with [them] that the [police], knowing—by the clear weight of the evidence before them—that [he] was not guilty of any assault, and they were clearly guilty of trespass[,]

determined that [he] would be arrested at [the non-City Defendants'] urging, even though there was not even arguable probable cause to support any charges." (Id. ¶¶ 36–37.) Gordon offers no basis how he knew the purported details of the conversation.

When the police returned, they arrested Gordon without taking "steps to investigate [his] credible allegations of trespass and assault." (Id. ¶¶ 38, 40.) The police "refused to even listen to the corroborating account" of a third person who was not with Gordon but nonetheless could serve as an "eyewitness." (Id. ¶ 39.) Gordon asserted that the police made false statements "at the behest" of the non-City Defendants and worked "in a joint effort" with them. (Id. ¶¶ 44, 48.) Gordon gave physical descriptions (but not the names) of three officers there, and he admitted that, he "cannot specify which police officer did what . . . ." (Id. ¶¶ 55–57.) He has not provided any evidence to allow a factfinder to match the descriptions to any officer named in this action.

### III.  Defendants' Evidence

For their part, the named City Defendants have provided several relevant documents. First, a police report states that Gordon's arrest occurred around 12:02 p.m., and that Benyamini told police at the arrest site that (1) he "was having a verbal dispute with" Gordon, that (2) Gordon "did shove and punch [him] to the floor," that (3) Gordon caused "pain and minor bru[i]ses to the right side of [his] face and lip," and that (4) he was "fearful for [his] safety / life." (Police Report at 1–2, D.E. # 84-2 at 2–3.) The report also notes that Emmanuel, the arresting officer, and Layne, Emmanuel's supervisor, were at the Property. (Id.) It does not identify the other officers. (Id.) The police report also notes that Benyamini refused medical assistance. (Id. ("R/M/A").)

Second, the named City Defendants provide several relevant court records. Emmanuel signed a sworn accusatory instrument that the prosecution offered to the Kings County Supreme Court as part of the criminal case against Gordon. (D.E. # 84-3 at 2.) In the March 5, 2014,

statement, Emmanuel accused Gordon of committing third-degree assault, third-degree attempted assault, third-degree menacing, and second-degree harassment. (Id.) The individual non-City Defendants also signed supporting sworn court statements, dated March 13, 2014. (Id. at 4–6.)

Meanwhile, the non-City Defendants provide a January 24, 2018 affidavit by Benyamini. (D.E. # 101 ("Benyamini Aff.").) He testifies that he and the other individual non-City Defendants "became involved with" the Property after the LLC had purchased it at a foreclosure sale. (Id. ¶ 5.) When they encountered Gordon, "he began screaming at [them]," said "that the foreclosure sale was not valid," and "threatened to kill" them. (Id. ¶ 7.) Benyamini testified that Gordon "hit [him] in the face" and "made additional threats," and that he "did not push or otherwise hit" Gordon, who was "much larger than" he. (Id. ¶ 8.) When the police arrived, the individual non-City Defendants "spoke briefly with them" and told them about Gordon's attack and threats. (Id. ¶¶ 10–12.) The police "did not mention any prior litigation" involving Gordon. (Id. ¶ 14.) After the officers "recommended that [Benyamini] press charges for" the "safety" of the non-City Defendants, he did so. (Id. ¶ 12.)

## STANDARD OF REVIEW

In their summary judgment motions, Defendants must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In the end, to award summary judgment, the Court must be convinced that "there can be but one reasonable conclusion as to the verdict, i.e., it is clear what the truth is." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (internal citation and quotation marks omitted).

8

## DISCUSSION

Gordon asserts federal claims against the City Defendants, as well as a § 1983 conspiracy claim and state-law claims against the non-City Defendants.[2] The only substantive constitutional violation alleged is a § 1983 malicious prosecution. Gordon alleges that the City Defendants are liable for malicious prosecution both because of their direct involvement and for their "failure to intervene." See Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015) (noting that a litigant may prove personal involvement by showing that "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," that "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts," or that the defendant showed "deliberate indifference" by "failing to act on information indicating that unconstitutional acts were occurring"). The state claims involve malicious prosecution and other torts. In addition to the merits arguments, the named City Defendants argue that the release in Gordon bars Gordon's claims. On the issue of conspiracy liability, Gordon asks this Court to reopen discovery. For the reasons set forth below, the Court grants summary judgment as to many, but not all, of Gordon's claims. The Court also denies Gordon's discovery request.

### I.    Release

The release agreement in Gordon frees "all past and present officials, employees, representatives, and agents of the City of New York" from "any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to" September 4, 2014. (D.E. # 84-6.) The named City Defendants argue

---

[2] Gordon cannot assert a § 1983 malicious prosecution claim against the non-City Defendants because they are not "state actors." However, this does not bar recovery for § 1983 conspiracy. See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (plaintiff may pursue a § 1983 action against a private person insofar as the plaintiff proves a substantive "violation of a federal right" caused by a state actor and a conspiracy between the private person and state actor to commit the violation).

that the broadly worded release prevents Gordon from asserting the federal claims in this action. (City Defs. Br. at 5–7.) This contention is not persuasive.

Releases are interpreted "according to general principles of contract law." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). "The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). The ambiguity or plainness of a contract term depends on whether "reasonable minds may differ" about its meaning based on the language. Peterson v. Regina, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013). "The meaning of an unambiguous contract 'is a question of law for the court to decide,' and is determined solely by reference to the 'four corners of the agreement.'" Id. (citations omitted).

The Court finds that the release unambiguously does not preclude Gordon's malicious prosecution claims against the City Defendants. The document focuses on "violation[s] of [Gordon's] civil rights" and discharges related "liability, claims, or rights of action . . . from the beginning of the world to" September 4, 2014. (D.E. # 84-6.) The named City Defendants emphasize that Gordon's "claim . . . is for initiating the criminal prosecution and exclusively involves actions taken by those officers, namely the averments made in the criminal complaint, on the date of his arrest—March 5, 2014." (City Defs. Br. at 6.) However, Gordon could not assert his malicious prosecution claims arising out of the March 5, 2014 arrest until November 10, 2014, when his prosecution terminated. (See D.E. # 84-5, 96-4) Malicious prosecution claims "require, as an element of the offense, 'the termination of the proceeding in favor of the accused.'" Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014) (en banc) (quoting Smith-Hunter v. Harvey, 734 N.E.2d 750, 752 (N.Y. 2002)). Until Gordon's malicious prosecution claim ripened, he had no

10

"claims" or "rights of action," and the Defendants suffered no "liability." As such, he could not have released this claim in the September 4, 2014 waiver.

The named City Defendants argue that Gordon "surrendered any and all 'liability' [they] might have had arising out of a prior violation of his civil rights, regardless of whether that liability had ripened into a fully justiciable <u>claim</u>." (City Defs. Br. at 6 (emphasis in original).) But the alleged malicious prosecution did not occur "prior" to Gordon's signing the release; the purported civil-rights violation occurred throughout the entire criminal process, which ended on November 10, 2014. To the extent that the named City Defendants attempt to distinguish "liability" from "claim" in the release, the Court is unpersuaded. The Court sees no meaningful difference between the terms "liability" and "claim." The named City Defendants appear to conflate liability with wrongful conduct, but an individual is not liable for its conduct unless "a particular remedy . . . can be enforced against" him, <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 621 F.3d 111, 147 n.50 (2d Cir. 2010) (emphasis omitted); <u>see also</u> <u>Liability</u>, Black's Law Dictionary 1053 (10th ed. 2014) ("legal responsibility to another or to society, enforceable by civil remedy or criminal punishment"). No such enforceable responsibility existed in this case until November 10, 2014. Contrary to how the named City Defendants characterize it, the release does not preclude liability that might exist in the future. In relevant part, the release discharges "any and all liability, claims, or rights of action . . . from the beginning of the world to" September 4, 2014. The release addresses only actual liability. The release does not say "any and all <u>actual or contingent</u> liability, <u>or any and all present or future</u> claims <u>or</u> rights of actions, <u>arising out of, relating to, or resulting from any and all acts or omissions</u>" by city employees "from the beginning of the world to" the signing date. If the city had intended to preclude future liability, it should have said so in writing.

Accordingly, Gordon's prior counsel was correct to advise him that the release "ha[d] nothing to do with" the instant § 1983 claims. (D.E. # 73 at 9:25–10:8.) The Court finds that the agreement does not preclude Gordon from pursuing his claims.

## II. The Merits

The Court considers the federal and state claims in turn. For the reasons stated below, the Court grants summary judgment on all but the federal malicious prosecution claims against Emmanuel; and the state malicious prosecution claims against the non-City Defendants.

### A. Federal Claims

#### 1. Malicious Prosecution

The City Defendants argue that the malicious prosecution claims fail as a matter of law because they had probable cause or are entitled to qualified immunity. For the reasons stated below, the Court finds a genuine issue of material fact precluding summary judgment in their favor.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013); see also Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999). "Probable cause, in the context of malicious prosecution," means "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003). The Court evaluates probable cause "in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to the time of arrest." Ying Li v. City of N.Y., 246 F. Supp. 3d 578, 611 (E.D.N.Y. 2017) (quoting Drummond v. Castro, 522 F. Supp. 2d 667, 677–78

12

(S.D.N.Y. 2007)). When police, as here, make a warrantless arrest, the prosecution begins with the arraignment. See Singer, 63 F.3d at 117.

Unlike false arrest claims, "in the context of a malicious prosecution claim, probable cause must relate to the specific crime charged in the criminal proceeding." Genovese v. County of Suffolk, 128 F. Supp. 3d 661, 669 (E.D.N.Y. 2015); cf. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."). "[A] finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges." D'Angelo v. Kirschner, 288 F. App'x 724, 726–27 (2d Cir. 2008) (citing Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989)). Probable cause to prosecute for one charge does not defeat a malicious prosecution claim with respect to another charge where those charges involve "distinct offenses involving distinct allegations" or where one charge "was more serious than the one for which" probable cause exists. Janetka, 892 F.2d at 190.

Gordon was arraigned on four charges: Assault in the Third Degree, N.Y. Penal Law § 120.00(1); Attempted Assault in the Third Degree, N.Y. Penal Law § 110/120.00(1); Menacing in the Third Degree, N.Y. Penal Law § 120.15; and Harassment in the Second Degree, N.Y. Penal Law § 240.26(1). The City Defendants argue that Gordon's malicious prosecution claim is barred because, as a matter of law, they had probable cause to arrest Gordon on the charges of third-degree assault and of disorderly conduct. (City Defs. Br. at 12–15.) The Court disagrees.

With respect to third-degree assault, an individual is guilty when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person." N.Y.

Penal Law § 120.00(1). "'Physical injury' means impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). Here, the record in the light most favorable to Gordon could convince a reasonable jury that the City Defendants had no probable cause to arrest Gordon because there was no basis to conclude that he caused physical injury to the non-City Defendants.

Under Gordon's version of events, it would not have been apparent to the City Defendants that Gordon caused an "impairment of physical condition" to the non-City Defendants. Such impairment requires more than a "blackened eye," People v. McDowell, 270 N.E.2d 716, 717 (N.Y. 1971); "bruising and scraping to [the] right arm, neck, and back" that requires no medical treatment or absence from work, People v. Boley, 963 N.Y.S.2d 726, 727 (2d Dep't 2013); or a "red mark" and "scratch on [the] face," People v. Williams, 476 N.Y.S.2d 19, 19 (2d Dep't 1984). But an injury may qualify if it involves, for instance, a "profusely" bleeding wound, People v. Tejeda, 578 N.E.2d 431, 432 (N.Y. 1991), or a bruised and swollen cheek and jaw that causes the victim to have trouble talking, In re Shawn L., 650 N.Y.S.2d 498, 499 (4th Dep't 1996).

Here, a reasonable jury could find that the City Defendants lacked enough information to believe there was a "substantial chance" that Gordon caused the non-City Defendants' injuries which would satisfy New York Penal Law § 10.00(9). See District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018). In the light most favorable to Gordon, the record shows that both he and the non-City Defendants told the 911 operator and police of Gordon's attack and threats, but none of the non-City Defendants had "visible signs of injury." (Pl. Aff. ¶ 36.) This would have been apparent to the officers because they saw the non-City Defendants prior to Gordon's arrest. According to the police report and his testimony, Benyamini told Emmanuel that Gordon "did shove and punch [him] to the floor," that Gordon "hit [him] in the face," and that Gordon caused "pain and minor bru[i]ses to the right side of [his] face and lip." (Benyamini Aff. ¶¶ 8, 10–12.)

14

The reported minor bruising conflicts with Gordon's testimony that Benyamini had no "visible signs of injury." (See Pl. Aff. ¶ 36.) Benyamini's refusal of medical assistance also supports Gordon's version of the facts. (Police Report at 1.) A reasonable jury could believe that the non-City Defendants were not bruised, or the jury could reconcile the two pieces of evidence by finding that the purported bruising was too minor to satisfy the assault statute.

In addition, a reasonable jury could find that the City Defendants did not have probable cause to believe Gordon caused "substantial pain" to the non-City Defendants. Substantial means "more than slight or trivial" but less than "severe or intense." People v. Chiddick, 866 N.E.2d 1039, 1040 (N.Y. 2007). Here, the police were told that Gordon caused "pain" and minor bruising, (Police Report at 1), but a reasonable jury could find that pain was akin to that in In re Philip A., 400 N.E.2d 358, 359 (N.Y. 1980). In Philip A., the New York Court of Appeals found no "substantial pain" when the evidence showed that the victim was "hit" and the attack caused him "pain, the degree of which was not spelled out" but was enough for him to start crying. 400 N.E.2d at 359. Likewise here, the mere mention of pain—without any mention of duration, severity, or other characteristics—and minor bruising might not satisfy the "substantial pain" prong of the assault statute. Accordingly, a reasonable jury could find that the City Defendants did not have enough information to have probable cause of "substantial pain" under the New York Penal Law. Therefore, a reasonable jury could find that the City Defendants lacked probable cause to prosecute Gordon on third-degree assault.

The City Defendants retort that if they did not have probable cause, they are at least entitled to qualified immunity. "Qualified immunity is an affirmative defense on which the defendant has the burden of proof." Outlaw v. City of Hartford, 884 F.3d 351, 367 (2d Cir. 2018). An officer has qualified immunity "if he can establish that there was 'arguable probable cause' to arrest."

Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). An officer's "reasonable" but "mistaken" conclusion of probable cause at the moment of arrest entitles him to qualified immunity. Wesby, The Supreme Court generally requires that precedents "place the lawfulness of the particular arrest 'beyond debate.'" Id. at 589 (quoting al-Kidd, 563 U.S. at 741). Still, "'[a] case directly on point' is unnecessary . . . ." Simon v. City of New York, 893 F.3d 83, 92 (2d Cir. 2018).

The City Defendants are not entitled to qualified immunity. Their only argument in support of qualified immunity is that Emmanuel was entitled to believe Benyamini's statements to 911 and to the police at the Property, and not Gordon's statements. (City Defs. Br. at 17.) The argument misses the point. Even taken at face value, Benyamini's statements might not provide enough information for a reasonable officer to have probable cause that an essential element for third-degree assault existed. The City Defendants point to no case showing that statements to police as meager in detail as the statements Benyamini gave can be sufficient to establish even arguable probable cause on third-degree assault. The Court has found none, and as shown above, Benyamini's statements could be insufficient to provide probable cause to arrest for assault. The New York cases detailed above provide more than enough "fair warning" that the conduct here, as construed in Gordon's favor, was unconstitutional. See Edrei v. Maguire, 892 F.3d 525, 539 (2d Cir. 2018). The Court therefore declines to find qualified immunity from Gordon's malicious prosecution claim.

The City Defendants also argue that they had probable cause to arrest Gordon for disorderly conduct pursuant to § 240.20(A)(1). But "in the context of a malicious prosecution claim, probable cause must relate to the specific crime charged in the criminal proceeding." Genovese, 128 F. Supp. 3d at 669. Gordon was not prosecuted for violation of § 240.20(A)(1), so it is immaterial whether the City Defendants had probable cause to arrest him for it.

Inexplicably, the City Defendants do not separately argue that they had probable cause or arguable probable cause to prosecute Gordon for attempted assault, harassment in the second degree, or menacing in the third degree. In sum, because a jury may reasonably find the City Defendants lacked probable cause and because disputed facts preclude a finding of arguable probable cause to prosecute Gordon for the crime of assault in the third degree, the Court denies summary judgment on the malicious prosecution claim.

### 2. Personal Involvement

The named City Defendants argue that Gordon fails to establish personal involvement as to Cordero, Dueno, and Layne in the alleged unconstitutional actions. (City Defs. Br. at 8–9.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Gordon may prove personal involvement by showing that Defendants "participated directly in the alleged constitutional violation"; were "grossly negligent in supervising subordinates who committed the wrongful acts"; or showed "deliberate indifference" by "failing to act on" the violation. Littlejohn, 795 F.3d at 314. Cordero and Dueno note that the record lacks any evidence to show their personal involvement. Indeed, Gordon testified that he "cannot specify which police officer did what." (Pl. Aff. ¶ 57.) No evidence shows that Cordero or Dueno were at the Property or aware of Gordon's criminal case.

The Court also finds in favor of Layne, but on a different rationale. The police report shows that he and Emmanuel were at the Property during the arrest, and that Emmanuel was the arresting officer. Cast in the light most favorable to Gordon, his testimony and the police report may convince a reasonable jury that Layne directly participated in, was grossly negligent in the direct supervision of, or failed to prevent Emmanuel's arrest—as is required to show personal

involvement for § 1983 false-arrest liability. See Littlejohn, 795 F.3d at 314. However, although the summary judgment record shows that Emmanuel "swore out an accusatory instrument" to initiate Gordon's prosecution, Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994), Gordon points to no evidence showing that Layne personally participated in Gordon's investigation or criminal case beyond the warrantless arrest. The arrest alone cannot suffice as conduct in violation of Gordon's Fourth Amendment right to be free from malicious prosecution. Only "seizure[s] . . . effected 'pursuant to legal process'" implicate that right. Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Warrantless arrests necessarily occur before "legal process" and do not constitute seizures made "pursuant to" such process. Id. Based on the evidence, no reasonable jury could find that Layne was personally involved in Gordon's prosecution.

The Court therefore grants summary judgment on Gordon's malicious prosecution claim as to Cordero, Dueno, and Layne on the theory that they were not personally involved. That claim may proceed only against Emmanuel.

### 3. Conspiracy Liability

Courts permit conspiracy liability under § 1983 because the Supreme Court has held that any person—public or private—who is a "willful participant in joint activity" with a state actor to violate federal rights qualifies as a person acting "under color" of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); see also Kletschka v. Driver, 411 F.2d 436, 448–49 (2d Cir. 1969). Accordingly, Gordon may pursue a § 1983 claim against any of the Defendants under the theory that they conspired to maliciously prosecute Gordon. In addition to proving the substantive constitutional violation, the plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional

18

injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 71 (2d Cir. 1999). Emmanuel and the non-City Defendants argue that Gordon fails to provide any evidence showing the first two elements. (See City Defs. Br. at 18–19; non-City Defs. Br. at 14–16.) Gordon comes close to conceding the point. (See Pl. Opp'n I at 11, D.E. # 87; Pl. Opp'n II at 10–11, D.E. # 93.)

Section 1983 "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." Pangburn, 200 F.3d at 71 (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)). But "[w]hile they need not produce direct evidence of a meeting of the minds, [the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996); see also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997) (citing Hinkle favorably). The evidence must "reasonably lead to the inference that [the defendants] positively or tacitly came to mutual understanding to try to accomplish a common and unlawful plan." Id.

At most, the admissible evidence shows that the non-City Defendants called 911, that police learned of Gordon's lawsuit against other police, that police interviewed Benyamini about the alleged attack, and that the individual non-City Defendants signed sworn court documents. However, Gordon fails to show anything "suspicious or improper" in the meetings between the non-City Defendants and police, "which are routine and necessary in the preparation of evidence." Filippo v. U.S. Tr. Co., 737 F.2d 246, 256 (2d Cir. 1984). Meetings between the police and individual non-City Defendants, without more, are not sufficient to "create a material issue of fact as to whether something improper took place during them . . . ." Id.; see also, e.g., Carrillos v. Incorporated Vill. of Hempstead, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) (collecting cases). And

proof that a witness signed a sworn court statement, even a false one, is not sufficient to prove that the witness is "carr[ying] out a deliberate, previously agreed upon plan" with police maliciously to prosecute Gordon, because the act is merely the "invocation . . . of New York's legal procedures." See Dahlberg v. Becker, 748 F.2d 85, 93 (2d Cir 1984); see also Rice v. City of N.Y., 257 F. Supp. 3d 395, 404 (E.D.N.Y. 2017). Accordingly, no reasonable jury could find that the police and non-City Defendants "had a 'meeting of the minds' and thus reached an understanding" to violate Gordon's constitutional rights. Adickes, 398 U.S. at 158.

Gordon attempts to create a genuine issue of material fact by testifying that Emmanuel and other police made false statements "at the behest of the" non-City Defendants, and the police worked "in a joint effort with" them. (Pl. Aff. ¶¶ 44, 48.) Gordon further testifies that, during the conversation between police and the individual non-City Defendants prior to his arrest, Emmanuel and other police "determined that [he] would be arrested at the [non-City Defendants'] urging, even though there was not even arguable probable cause to support any charges." (Id. ¶ 37.) The Court need not consider these statements because the affidavit does not "show affirmatively that [Gordon] is competent to testify," and because the statements are not "made on personal knowledge." Fed. R. Civ. P. 56(e). In any event, these statements are "conclusory assertions of a conspiratorial agreement . . . ." Amato v. Harnett, 936 F. Supp. 2d 416, 440 (S.D.N.Y. 2013). The Second Circuit has emphasized that a litigant may not rebut a summary judgment motion by providing "unsubstantiated speculation[] to suggest" that something "untoward took place" during conversations between state and private actors. See Scott v. Almenas, 143 F.3d 105, 115 (2d Cir. 1998). Emmanuel and all of the non-City Defendants are entitled to summary judgment on this conspiracy allegation.[3]

---

[3] "[P]rivate corporations can act only through natural persons, and their § 1983 liability arises through the conduct of their employees." Schoolcraft v. City of N.Y., 103 F. Supp. 3d 465, 520 (S.D.N.Y. 2015). Even if the individual non-

Gordon also asks this Court to reopen discovery because Gordon "was pro-se for ten months and the period of discovery expired," and because "[t]here needs to be discovery on this matter." (Pl. Opp'n I at 11; Pl. Opp'n II at 10–11.) The Court denies the request. Granting additional discovery is a discretionary judgment. See Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016). In relevant part, Rule 56(d) permits this Court to reopen discovery if Gordon "shows by . . . declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to the summary judgment motions. The declaration must include (1) "the nature of the uncompleted discovery," (2) "how the facts sought are reasonably expected to create a genuine issue of material fact," (3) "what efforts [Gordon] has made to obtain those facts," and (4) "why those efforts were unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994); see also Int'l Union of Operating Eng'rs, Local 17, AFL-CIO v. Union Concrete & Constr. Corp., 147 F. Supp. 3d 202, 211 n.7 (W.D.N.Y. 2015). Even if the declaration satisfies the requirements, this Court may deny a request for "cumulative" or "speculative" materials, or a request based solely on "bare, generalized assertions." Alphonse Hotel, 828 F.3d at 151–52.

Gordon, now counseled, has not made the required declaration and his briefing fails to make more than bare, generalized assertions. And although he "must be afforded 'a reasonable opportunity to elicit information within the control of [his] adversaries,'" In re Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)), he received such an opportunity in this case. Discovery proceeded from September 8, 2016, to December 27, 2017. (See D.E. # 45; D.E. dated Oct. 6, 2017.) During five months of that period, Gordon was counseled. (See D.E. # 68.) At the time, Gordon pursued discovery in a diligent fashion. (See D.E. # 73 at 7:10–23; D.E. # 103-1 to -2.) More than four

City Defendants served as employees or agents of the LLC, which the summary judgment record does not establish, the LLC cannot be liable because the individuals are not liable.

months into discovery, Gordon's counsel represented that his client was "current on his discovery obligations," and that there was "ample time remaining" for depositions and case preparation. (D.E. # 62.) When the counsel withdrew, the magistrate judges extended the discovery period so that Gordon, then proceeding pro se, could seek counsel to help him with discovery. Magistrate Judge Bulsara directed Gordon to fulfill his discovery duties—with or without the assistance of new counsel—during the last two months of the discovery period. He gave Gordon fair warning of the consequences associated with neglecting discovery obligations even as a pro se litigant. Indeed, Magistrate Judge Bulsara stated that future counsel would be unable to perform additional discovery to fill any holes in his case. (D.E. # 108 at 8:15–18; see also D.E. dated Oct. 6, 2017.) Under these circumstances, the Court finds that Gordon had "ample opportunity to investigate" his claims through discovery. Lunts v. Rochester City Sch. Dist., No. 07-CV-6272 (MAT), 2011 WL 4074574, at *5 (W.D.N.Y. Sept. 13, 2011); see also, e.g., Hodnett v. Johnson, No. 83-CV-1007 (CPS), 1987 WL 6398, at *5 (E.D.N.Y. Jan. 29, 1987). The Court declines to reopen discovery so that Gordon may further pursue the issue of conspiracy liability.

The Court grants summary judgment on the issue of conspiracy liability under § 1983. Because the non-City Defendants are not otherwise state actors under § 1983, the Court grants summary judgment on the federal claims against them.

### B.    State Claims

The Court now turns to the state claims against the non-City Defendants. The Second Amended Complaint asserts malicious prosecution, intentional and negligent infliction of emotional distress, and tortious interference with contract claims against all the non-City Defendants, as well as a negligent hiring, training, and retention claim against the LLC.[4]

---

[4] Contrary to what the named City Defendants suggest in their briefing, (see City Defs. Br. at 10–11), the Second Amended Complaint does not assert state claims against them. The Second Amended Complaint also alleges state-

"Where a partial response to a motion [for summary judgment] is made—i.e., referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." Jackson v. Fed. Express, 766 F.3d 189, 197–98 (2d Cir. 2014). Here, Gordon fails to address the non-City Defendants' arguments with respect to the intentional and negligent infliction of emotional distress, tortious interference with contract, and negligent hiring, training, and retention claims. Accordingly, the Court dismisses those abandoned claims.

Regarding the remaining claim, New York law places a "heavy burden" on plaintiffs to prove malicious prosecution. Smith-Hunter v. Harvey, 734 N.E.2d 750, 752 (N.Y. 2000). The litigant must prove (1) "the commencement or continuation of a criminal proceeding by the defendant against the plaintiff," (2) "the termination of the proceeding in favor of the accused," (3) "the absence of probable cause for the criminal proceeding," and (4) "actual malice." Id. The non-City Defendants challenge the first element, contending that Gordon failed to make a genuine issue of material fact as to their "commencement or continuation" of the prosecution against Gordon. (See non-City Defs. Br. at 15–17.)

A "defendant other than a public prosecutor" may be liable for malicious prosecution under New York law. Torres v. Jones, 47 N.E.3d 747, 761 (N.Y. 2016). The defendant must play a "catalytic role" in the commencement or continuation of the plaintiff's criminal case. Ramos v. City of N.Y., 729 N.Y.S.2d 678, 690 (1st Dep't 2001); cf. DeFilippo v. Cty. of Nassau, 583 N.Y.S.2d 283, 284 (2d Dep't 1992) (granting summary judgment where no evidence showed that the corporate private defendant failed to make a "full and complete statement" to the prosecution,

---

law conspiracy. For the same reasons the Court finds summary judgment on the issue of § 1983 conspiracy, the Court finds that there is no genuine issue of material fact on the issue of agreement, and that the non-City Defendants are entitled to summary judgment on the issue of conspiracy liability.

that it gave "false information," or that it "kept back evidence which would affect the result"). For instance, in Torres, the New York Court of Appeals found that police officers may be liable for providing to the prosecution a false confession they "knew or should have known" to "cause prosecutors to bring a criminal proceeding against" the plaintiff. 47 N.E.3d at 766. Moreover, the Second Department has affirmed a verdict against a civilian defendant because he knowingly gave false information to the authorities and therefore "affirmatively induced law enforcement officials to act." Coscia v. El Jamal, 69 N.Y.S.3d 320, 324 (2d Dep't 2017).

In this case, under the record in the light most favorable to Gordon, a jury may reasonably credit his testimony and find that he "did not lay a hand on" or "touch" the non-City Defendants. (See Pl. Aff. ¶¶ 27, 52.) Under such circumstances, Benyamini told police, and the non-City Defendants later reaffirmed in signed sworn court documents, knowing falsehoods: that Gordon attacked him. Contrary to what the non-City Defendants suggest, (see non-City Defs. Br. at 16–17), a jury could reasonably find that they "knew or should have known" that statements by a purported victim or witness would lead to prosecution, Torres, 47 N.E.3d at 766. Accordingly, a genuine issue of material fact in this case precludes summary judgment as to the state malicious prosecution claims against the non-City Defendants.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART both the named City Defendants' joint motion for summary judgment and the non-City Defendants' joint motion for summary judgment. The Court also DENIES Gordon's request to reopen discovery.

With respect to the federal claims, the Court grants summary judgment in favor of Cordero, Dueno, Layne, and the non-City Defendants. The Court grants summary judgment in favor of

Emmanuel on the issue of conspiracy liability. However, the Court denies summary judgment on the malicious prosecution claims against Emmanuel.

With respect to the state claims, the Court dismisses as abandoned the intentional infliction of emotional distress, negligent infliction of emotional distress, tortious interference with contract, and negligent hiring, training, and retention claims. The Court also grants summary judgment in favor of the non-City Defendants on the issue of conspiracy liability under state law. However, the Court denies summary judgment on the malicious prosecution claims against the non-City Defendants. Those claims; the non-City Defendants' indemnification and contribution crossclaims against the City Defendants; and the non-City Defendants' assault and battery counterclaims against Gordon are the only remaining state claims for trial.

The Court sua sponte dismisses Gordon and the non-City Defendant's claims and crossclaims against the unnamed John and Jane Doe officers without prejudice. See Blake v. Race, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) ("[T]he Court dismisses the claims against the unnamed John Doe defendants. Though discovery is complete in this case, plaintiff has failed to identify any of the unnamed defendants, or to present any evidence demonstrating their involvement in the infringing activity.").

The Court further ORDERS the parties to file a proposed joint pretrial order no later than 28 days from the date of this Memorandum and Order. The Court respectfully REFERS the proposed order to Magistrate Judge Bulsara for review.

SO ORDERED.

Dated: September 28, 2018
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge

25