```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                       15-CV-2439(CBA)
     NICK GORDON,
 4                                       United States Courthouse
              Plaintiff,                 Brooklyn, New York
 5
              – versus –                 January 31, 2019
 6                                       4:00 p.m.
     CITY OF NEW YORK, et al.,
 7
              Defendants.
 8
     ------------------------------x
 9
          TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
10             BEFORE THE HONORABLE CAROL B. AMON
                 UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   Attorney for Plaintiff:  THE FEINSILVER LAW GROUP
                              215 Millburn Avenue
14                            Millburn, New Jersey 07041
                              BY:  H. JONATHAN RUBINSTEIN, ESQ.
15
                              NEW YORK CITY LAW DEPARTMENT
16                            100 Church Street
                              New York, New York 10007
17                            BY:  PETER BROCKER, ESQ.

18
     Attorney for Defendant:  ALI & BAINS P.C.
19                            118-35 Queens Boulevard
                              Forest Hills, New York 11375
20                            BY:  TEJINDER BAINS, ESQ.

21
     Court Reporter:          RIVKA TEICH CSR, RPR, RMR, FCRR
22                            Phone:  718-613-2268
                              Email:  RivkaTeich@gmail.com
23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

PROCEEDINGS

1                    (In open court.)

2                    THE COURTROOM DEPUTY:  All Rise.  Case number

3       15-CV-2439, Gordon versus Emmanuel.  On for pretrial

4       conference.

5                    THE COURT:  The parties want to state their

6       appearances, please.

7                    MR. BAINS:  For plaintiff, Nick Gordon, Tejinder

8       Bains.  Good afternoon.

9                    MR. RUBINSTEIN:  Good afternoon, your Honor,

10      Jonathan Rubinstein for the non-city defendants.

11                   MR. BROCKER:  Peter Brocker from the New York City

12      Law Department for Police Officer Emmanuel.

13                   THE COURT:  Okay.

14                   MR. RUBINSTEIN:  Your Honor, would it be possible to

15      speak with the Court off the record before we start?

16                   THE COURT:  Is it about settlement.

17                   MR. RUBINSTEIN:  No, your Honor.

18                   THE COURT:  What is the subject matter?

19                   MR. RUBINSTEIN:  My health.

20                   THE COURT:  Sure.

21                   (Discussion held off the record.)

22                   THE COURT:  And if you need to stand,

23      Mr. Rubinstein, for the conference you may do so.

24                   MR. RUBINSTEIN:  I'll be okay to sit.

25                   THE COURT:  Everyone can be seated.  You can remain

PROCEEDINGS

1    standing if you wish.

2              I've got the joint pretrial order.  I guess I'm not

3    sure what are really the major issues here, if there are any.

4              The three witnesses that the plaintiff intends to

5    call, you've got a number of witnesses here, but who is it

6    that you say, the three who are you intending to call?

7              MR. BAINS:  My client, Mr. Obadiah, and third

8    witness who was there, we're attempting to still locate him.

9              THE COURT:  Who is that on your list?

10             MR. BAINS:  Sergio Matos.

11             THE COURT:  Those are the three you're going to

12   call.

13             MR. BAINS:  Yes, Judge.

14             THE COURT:  Now for the defendant police officers

15   you've got a list, who are you really calling?

16             MR. BROCKER:  Yes, your Honor.  I think certainly it

17   would be Officer Emmanuel and Officer Dueno, his partner.  To

18   the extent that they are not called by other parties, possibly

19   co-defendants would be called, Mr. Benyamini, Mr. Taied and

20   Mr. Ainehsazan.  The additional police officers who are

21   listed, I don't anticipate needing to call, that would be

22   Lieutenant Layne and Officer Cordero.  But we'd like to

23   reserve the opportunity to call them, should the need arise at

24   trial.

25             THE COURT:  Okay.  Are you calling -- I take it all

PROCEEDINGS

1  of your defendants, I take it?

2          MR. RUBINSTEIN:  Yes, I am, your Honor.

3          THE COURT:  Anyone else that hasn't been mentioned.

4          MR. RUBINSTEIN:  Possibly Mr. Carbuccia, Mr. Wrublin

5  and/or Ms. Wenig.

6          THE COURT:  Mr. Carbuccia and who else?

7          MR. RUBINSTEIN:  Wrublin and possibly Ms. Wenig.

8          THE COURT:  What is Ms. Wenig going to show?

9          MR. RUBINSTEIN:  She was the receiver.  And she's

10 going to tell us that not only was she the receiver appointed,

11 which undercuts the underlying base for why Mr. Gordon, why he

12 was in the building when it happened, she is going to tell us

13 that Mr. Gordon threatened her as well.

14         THE COURT:  On what day, and what time, and for

15 what?

16         MR. RUBINSTEIN:  When she was the receiver she was

17 acting in a manner that he wasn't happy with.  He threatened,

18 physically threatened her, she had to call her husband to

19 speak to Mr. Gordon.

20         THE COURT:  Is there any objection to that

21 testimony?

22         MR. BAINS:  Judge, there is.  This the first time

23 we're hearing about any alleged past bad acts of Mr. Gordon.

24         THE COURT:  Did you read the pretrial order?

25         MR. BAINS:  Judge, I did.

PROCEEDINGS

1          THE COURT:  It's right there.  It says Mr. Gordon

2   threatened her.

3          MR. BAINS:  Judge, then that was the first time that

4   it was brought to our attention.  I still believe we have an

5   opportunity to object to it now.

6          THE COURT:  Was she deposed?

7          MR. RUBINSTEIN:  No one was deposed, your Honor.

8          THE COURT:  No one was deposed.  Okay.  Why should

9   this testimony be admissible?

10         MR. RUBINSTEIN:  Well, your Honor, it shows a

11  pattern, especially in light of the allegations that

12  Mr. Gordon has made as to why he was present in the building

13  in the first place.  He claims he was trying to put tenants

14  in, he was the only one who had a put in a tenant.  My client

15  bought it as a referee sale.  There was a property manager in

16  place.  Ms. Wenig was the receiver of the property.  He

17  threatened her with physical violence, exactly what happened

18  with my clients.

19         THE COURT:  Isn't that just a, he did it before so

20  he must have done it again?  Why is that admissible under Rule

21  404.

22         MR. RUBINSTEIN:  Again, your Honor, I would say it

23  shows a pattern and consistent behavior because he's done it

24  the same time, the same property.

25         THE COURT:  I think you're going to have to tell me

PROCEEDINGS

1  why under Rule 404(b) that that would be admissible.  Because

2  evidence of a crime is not admissible to prove a person's

3  character in order to show that on a particular occasion that

4  personal acted in accordance with that character.  And then it

5  says under two, it may be admissible for another person, such

6  as motive, opportunity, and intent, preparation, plan,

7  knowledge, identity, absence of mistake, lack of accident.

8         But I'm not understanding now why his threat to her

9  comes within any of those exceptions.

10         MR. RUBINSTEIN:  Your Honor, it goes to motive.

11         THE COURT:  Motive for the assault?

12         MR. RUBINSTEIN:  For the whole altercation for him.

13  Quite frankly, fabricating this entire incident as to what

14  happened.

15         THE COURT:  What we've got here is there is a malice

16  prosecution.  Gordon claims there was no assault, that it was

17  a malice prosecution, and he was charged with something, that

18  the police officer's had known he shouldn't have been charged

19  with at the behest of the civilian witnesses, that's his

20  claim.

21         The claim on behalf of the other defendants is that

22  he assaulted them.

23         So I don't know -- so your client's claim is that

24  they were assaulted.

25         MR. RUBINSTEIN:  That's correct, your Honor.

PROCEEDINGS

1        THE COURT:  You're saying this is relevant to the

2  motive for the assault.

3        MR. RUBINSTEIN:  Yes, your Honor.  It's relevant as

4  to exactly what happened, and why, on the date of the

5  incident.  What Mr. Gordon was doing there in the first place,

6  who initiated an altercation.

7        The fact that he threatened a receiver who was doing

8  her job because it was interfering with his desire to keep the

9  property, then he came after my client's because they were the

10  successful purchasers of the referee sale.

11        THE COURT:  Still not sure why it's motive for an

12  assault.  In any event, both sides seem to want to get into

13  who owned the property and all of that.  Are we going to spend

14  a lot of time debating that or what?  What evidence do you

15  want to put in about the property, because you've got a number

16  of exhibits on your list, but then you object to other

17  exhibits on their list.

18        MR. BAINS:  Just the deed.  There is a deed with my

19  client's name on it.  And yes, there was a foreclosure sale

20  but that's not the end of the sale process.  There has to be a

21  transfer of the deed from the referee to the new purchaser.  I

22  concede that his clients are the new purchasers, but at the

23  time of the incident the property was deeded to my client.

24  You go in any --

25        THE COURT:  You say that provides a basis for him to

PROCEEDINGS

1    be legitimately there?

2              MR. BAINS:  Yes, correct, Judge.

3              THE COURT:  What does that have to do with whether

4    he punches somebody or not?

5              MR. BAINS:  It doesn't have to do with whether there

6    was malice prosecution or whether he punched anybody, but that

7    he was legitimately was there.  And it ties in to the fact

8    that if he's telling these individuals to leave, to a property

9    that he is solely deeded to, then they are trespassing.

10   Because trespassing is, if you don't leave --

11             THE COURT:  Why is that relevant to the assault or

12   the malice prosecution?

13             MR. BAINS:  They were someplace they should not have

14   been.

15             THE COURT:  That doesn't mean that they should have

16   been assaulted.

17             MR. BAINS:  I don't disagree with that.  But it

18   really does add to the whole case as to why they were there or

19   why they should not be there.  That's going to come up.

20             THE COURT:  It looks like the defendants want to put

21   all this stuff in too, right?

22             MR. RUBINSTEIN:  Your Honor, I think we have to

23   because their whole case is predicated on the fact that

24   Mr. Gordon had a right to be there.  There was a receiver

25   appointed and a property manager appointed.  My clients were

PROCEEDINGS

1  there with the permission of the property manager.  Mr. Gordon

2  who was not there appropriately --

3          MR. BAINS:  We haven't discussed that part of what

4  they want to put in.  I only objected to Ms. Wenig for the

5  purposes of the alleged attack or whatever it is.

6          THE COURT:  He wants to put in the deed to the

7  property.  You object to that.  Someone objects to that.  And

8  then for your part --

9          MR. BAINS:  Judge, I don't object to any documents

10  as to who the owner is or what the ownership status of the

11  building was.

12          THE COURT:  You have.  You've objected to all of

13  them, the foreclosure judgments, terms of sale, referee

14  receipt, memorandum purchase.  You've objected.

15          MR. BAINS:  I withdraw that objection.

16          MR. BROCKER:  If I may, I actually believe that some

17  of those objections are Officer Emmanuel objections to this

18  whole line of inquiry.

19          THE COURT:  I'm looking at -- I'm not looking at his

20  objections.

21          MR. BROCKER:  If I may --

22          THE COURT:  Objections to the plaintiffs exhibit?

23          MR. BROCKER:  And co-defendants.  One of the

24  contemplated motion in limine.

25          THE COURT:  You're objecting to your co-defendant's

PROCEEDINGS

1  exhibits.  How do I know who is objecting?

2          MR. BROCKER:  I apologize, your Honor.  I'm not sure

3  there is a way for the Court to --

4          THE COURT:  All of these objections to these

5  foreclosure judgments, terms of sale, are all your objections?

6          MR. BROCKER:  I believe so, your Honor, yes.  I

7  apologize for not making that clear.  The reason for that is,

8  simply put, whether or not somebody is trespassing is not an

9  issue in this case.  This is malice prosecution case involves

10 an assault.  It's just going to confuse the jury and waste the

11 Court's and parties time.

12         THE COURT:  Both the parties want this evidence in.

13         MR. BROCKER:  It's not clear to me, that should be

14 dispositive value.

15         THE COURT:  It doesn't, but I'm just --

16         MR. BROCKER:  It seems to me that going down the

17 road of whether or not there was a valid foreclosure sale, who

18 was the owner, whether or not anybody was present, whether or

19 not Mr. Gordon struck the clients of Mr. Rubinstein; and in

20 that regard, that is the Court's issue.  It doesn't matter if

21 they were in a building lawfully or unlawfully.  That assault,

22 whether or not there was arguable probable cause to believe

23 that assault occurred, is the core issue in this case.

24         So all of the ancillary facts of regarding the sale

25 of this building are, with respect, not relevant to what the

PROCEEDINGS

1  jury is going to be asked to decide in this matter.

2           MR. BAINS:  Here is why it is relevant and why it

3  goes to motive.  Because if they were trespassing then they

4  have a motive to lie as to why they are saying Mr. Gordon hit

5  them and why they engaged in the conduct that they engaged in.

6           THE COURT:  What conduct was that?

7           MR. BAINS:  Making up the allegations that

8  Mr. Gordon hit them.

9           THE COURT:  Can we arrive at some stipulated -- how

10  much of this is actually disputed?

11           MR. BAINS:  I don't think anything.  It's all based

12  on documentary evidence.  It's a certified deed from the Kings

13  County Registrar, the Supreme Court judgment of foreclosure.

14           MR. RUBINSTEIN:  We have e-mails showing that my

15  clients were given permission to come to the premises from the

16  property manager.

17           Your Honor, I put all this in because it's based on

18  their narrative of the case, and their whole theory of case

19  why Mr. Gordon was there, why the altercation was there, who

20  was acting improperly, who is at fault.  If they are going to

21  make the allegations that only Mr. Gordon could be present,

22  which is what they said in their multiple versions of their

23  complaint, only he had permission to give my clients -- he was

24  the only one to give my clients permission to come to the

25  premise to conduct an inspection, I have to oppose it.

PROCEEDINGS

1           THE COURT:  But your theory is not that he owned the

2    property, your clients owned the property and could come in,

3    your theory is simply that they had a reason to look at it

4    because there had been a foreclosure sale and they bought it.

5    The deed hadn't transferred and they got permission to come in

6    and look.

7           MR. RUBINSTEIN:  Correct.

8           THE COURT:  You're not relying on the these

9    foreclosure documents or anything to give them a legal basis

10   to be on the property, correct, that those are just documents

11   to back up why they are interested in being there.

12          MR. RUBINSTEIN:  Why they were given permission to

13   be there.  And Mr. Gordon's allegations that my clients had no

14   right to be there are frivolous.  It goes to his motive why

15   he's making up the story.  His motive was to try to get the

16   building back after the sale.  He was trying to do anything he

17   could to prevent my clients with going through with the

18   closing.  He didn't want them to have an inspection.  He

19   didn't want -- that's really what happened here.

20          Mr. Gordon was trying to upset the sale, just like I

21   provided the document on the summary judgment for another

22   matter where they were found making up stories and cast

23   dispersion on the property because they were getting property

24   out of bankruptcy.  It's the same thing he was doing.

25          THE COURT:  Is that something you're intending to

PROCEEDINGS

1  introduce?

2         MR. RUBINSTEIN:  Yes, your Honor.

3         THE COURT:  Where is that in your exhibit list?

4         MR. RUBINSTEIN:  Yes, your Honor, DDM, A1 Management

5  Inc.

6         THE COURT:  Is that document 13, defense 13?

7         MR. RUBINSTEIN:  I marked it as DDM.

8         THE COURT:  Is that decision and order from A1

9  Management?

10         MR. RUBINSTEIN:  Yes, your Honor.

11         THE COURT:  That's 13.

12         MR. RUBINSTEIN:  I apologize, someone printed out an

13  old version of the pretrial order for me.

14         THE COURT:  I didn't understand why they were filed

15  exparte.

16         MR. RUBINSTEIN:  We got a notice to send some

17  exhibits to the courtroom, I presumed for your Honor; I gave a

18  copy to each counsel as well.

19         THE COURT:  You've seen plaintiff's exhibits?

20         MR. RUBINSTEIN:  I actually haven't been given a

21  copy of them.

22         MR. BAINS:  I'll get it to them.  I submitted it to

23  the Court, I'll give it to them today.

24         THE COURT:  Why did you file exparte?

25         MR. BAINS:  I called the Court, it was the 22nd, I

PROCEEDINGS

1  misinterpreted your order.  I thought they were to be filed, I

2  was given directions to file them and then overnight them.

3          THE COURT:  Why were they filed exparte?

4          MR. BAINS:  That's the four exhibits, that's the

5  only way you can file them.

6          THE COURT:  You can only file exhibits exparte?

7          MR. BAINS:  On the computer.  I tried a separate

8  way, but I couldn't.

9          THE COURT:  Anyway, I don't see Exhibit 13 here.

10         MR. BROCKER:  I have a copy here, your Honor.

11         THE COURT:  I've got it.  Does this pertain to the

12  property in this case?

13         MR. RUBINSTEIN:  No, your Honor.

14         THE COURT:  What are you seeking to get this in for?

15         MR. RUBINSTEIN:  Again, your Honor, it shows motive,

16  intent.  It just undercuts their entire theory of the case.

17  This is where Mr. Gordon engaged in similar conduct.  Another

18  judge found him making up stories about counsel and the

19  parties in bad faith in order to try to interfere with the

20  bankruptcy sale, express findings for that fact.

21         THE COURT:  You may be able to cross-examine on

22  this.  This doesn't come in independently as an exhibit.  I'm

23  not going to allow that.

24         Then there is something else about Judge Scanlon's

25  transcript discovery disputes, that's Exhibit 14.

PROCEEDINGS

1          MR. RUBINSTEIN:  That is because Mr. Gordon made

2    statements on the record under oath when he was pro se.

3          THE COURT:  What statements are you seeking?

4          MR. RUBINSTEIN:  I'll have to go through the

5    transcript.  But in our summary judgment about Mr. Gordon's

6    theory of the case and basically that the police officers

7    acted from their own analysis, not because of what my clients

8    have done.

9          Mr. Gordon has two theories in the case and they are

10   in conflict.  He repeated this on multiple occasion.

11         THE COURT:  You can't just throw in a whole

12   transcript.  What questions and answers do you want from this

13   transcript?

14         MR. RUBINSTEIN:  I don't have the specific cites,

15   your Honor.  Can I get that to the Court if requested?  I want

16   the part of when Mr. Gordon tells the story of what happened

17   on the day of the incident, the police officers acted on their

18   animis, when he previously disclosed that he previously sued

19   the city.

20         And this shows they weren't acting on the behest of

21   my client, but they were making their own independent decision

22   with their own independent motivation, which precludes a

23   finding of malice prosecution on behalf of my clients.  It

24   defeats a prime element of a cause of action.

25         MR. BAINS:  Page ten.

PROCEEDINGS

1          THE COURT:  I'm reading it.  This isn't inconsistent

2     with the claim that your clients made up the assault.  It's

3     talking about why he thinks the police officers did it, which

4     is still his position.  I think he's still claims the position

5     that the cops said that to him.  So what is inconsistent?

6          MR. RUBINSTEIN:  Your Honor, in a case for malice

7     prosecution against a private citizen you have to show that

8     the private citizen acted with extreme zeal or vigor that it

9     caused the officer to act, when a police officer may might not

10    have the otherwise done so.

11          If the police officer acted on his own accord, there

12    is no cause for malicious cause law and affirms that the

13    police officers acted from their own animus.

14          THE COURT:  He's not under oath here.

15          MR. RUBINSTEIN:  I believe he was sworn in before

16    the comments pro se.  He was between attorneys at the time.

17          THE COURT:  I don't see where he was sworn in.  You

18    can ask him about whether he said these things if you think

19    they are somehow inconsistent.  This is the statement you

20    made, you can question about it.  I don't know that it comes

21    in as an -- it's a prior statement of a party, so you can

22    admit it as a prior statement of a party.  It can come in on

23    that grounds, if that's what you want to do.

24          MR. RUBINSTEIN:  Yes, your Honor.

25          THE COURT:  Any time of you have a prior statement

PROCEEDINGS

1   of the party, if there are portions of this that you want to

2   add a prior statement of a party, fine.

3           MR. RUBINSTEIN:  I'm not going to read the entire

4   transcript.

5           THE COURT:  You've got to tell the parties what

6   portions you want to use.

7           MR. RUBINSTEIN:  I'll do that, your Honor.

8           THE COURT:  Are there any other exhibits or specific

9   concerns that -- let me go through Plaintiff's Exhibits.  The

10  criminal complaint, who is objecting to that?

11          MR. BROCKER:  Your Honor, if I may, in terms of the

12  objections, and plaintiff's counsel will correct me, I believe

13  Officer Emmanuel stated objections to exhibits.  I think that

14  all of the objections are from Officer Emmanuel as well as

15  objections to plaintiff's exhibits.

16          THE COURT:  So all these objections to Plaintiff's

17  Exhibits and to co-defendants exhibits are made by Police

18  Officer Emmanuel?

19          MR. BROCKER:  That is my recollection, your Honor.

20          THE COURT:  Is it correct that the civilian

21  defendants are not objecting to any of the plaintiff's

22  exhibits; is that correct?

23          MR. RUBINSTEIN:  That's correct, your Honor.

24          THE COURT:  And in terms of the Defendant's

25  exhibits, the civilian defendant exhibits, the plaintiff is

PROCEEDINGS

1   not objecting to any of those?

2          MR. BAINS:  Judge, no.

3          MR. RUBINSTEIN:  We do object to their witnesses,

4   though.

5          THE COURT:  The witnesses they said they were going

6   to call?  They just said they were calling -- you're talking

7   about plaintiff?

8          MR. RUBINSTEIN:  That's correct, your Honor.

9          THE COURT:  He said he's calling Henry Obadiah and

10  Sergio Matos.  I don't see anybody listing objections anywhere

11  to these witnesses and possibly -- plaintiffs witnesses were

12  Obadiah, Matos, and who else did you say you'd call?

13         MR. BAINS:  And Judge one other issue, we don't

14  right now have the 911 tape.  My understanding is the New York

15  City Police Department rewrites over tapes every 90 days.  But

16  I believe that the attorney who was involved in the criminal

17  matter still has a copy of the 911 tape.  So we're trying to

18  pin that down, to find out who the reporter is, then we'll

19  subpoena the reporter.

20         THE COURT:  On your exhibit, who are you calling?

21  As I understand it, you said the plaintiff, Mr. Obadiah and

22  Mr. Matos.

23         MR. BAINS:  That's it, Judge.

24         THE COURT:  Who are you objecting to?

25         MR. RUBINSTEIN:  Both of them, your Honor.  They

PROCEEDINGS

1    were not identified in Rule 26 disclosures or answering

2    interrogatories.  The first we heard from Mr. Obadiah is the

3    unsigned affidavit opposition for summary judgment.

4            THE COURT:  When did you hear about him?

5            MR. RUBINSTEIN:  Only after the motion for summary

6    judgment was filed.

7            THE COURT:  After?

8            MR. RUBINSTEIN:  After.  We first heard of him in

9    the opposition for summary judgment.  Same with Mr. Matos,

10   which is why I filed A1 papers.  He was involved in that same

11   conspiracy.

12           THE COURT:  What same conspiracy?

13           MR. RUBINSTEIN:  In other words, in A1 bankruptcy

14   Mr. Gordon was involved in bad faith conduct for trying to

15   interfere with the bankruptcy court sale of another property.

16   Mr. Matos was one of the people who was identified in the

17   order as having been part of that conspiracy.

18           Now we've got the opposition for summary judgment

19   and for the first time we hear Mr. Matos is involved in this

20   property, purportedly the property manager for Mr. Gordon.

21           MR. BAINS:  Counsel can question him about that if

22   he wants to.

23           MR. RUBINSTEIN:  These people weren't identified in

24   the discoveries.  We served interrogatories.  We didn't hear

25   about them until we got opposition summary judgment.

PROCEEDINGS

1          MR. BAINS:  My client proceeded pro se during the

2     entire discovery process, but there really has been no

3     prejudice.  They have known both about Mr. Matos and

4     Mr. Obadiah for at least five, six months.  His address is

5     provided, they could have evaluated.  There was no prejudice

6     whatsoever.

7          THE COURT:  I'm not going to strike the witnesses.

8          MR. BROCKER:  Your Honor, if I may.  Would the Court

9     permit parties to the just brief the issue of the

10     admissibility of the testimony of these two witnesses?

11          THE COURT:  Why?  What is your objection to it?

12          MR. BROCKER:  Officer Emmanuel's objection is very

13     similar.

14          THE COURT:  There is a part of my pretrial order

15     where can you object to witnesses, I don't see that anybody

16     had done this in my pretrial order, unless I missed some page.

17          MR. BROCKER:  Actually, there might have been a

18     mutual mistake on counsel's part --

19          THE COURT:  What is your objection to them

20     testifying?

21          MR. BROCKER:  I would like the opportunity to better

22     flush out the issue of any potential prejudice to defendants

23     resulting from the lack of identification of these two

24     individuals.

25          THE COURT:  You've known about them about five or

PROCEEDINGS

1    six months, you've known what they are going to say, so how

2    are you prejudiced?

3              MR. BROCKER:  In terms of knowing what they are

4    going to say, we only have the one affidavit for Mr. Obadiah

5    identified in opposition to the defendant's motions for

6    summary judgment.  Mr. Matos I know is not on record in any

7    form in this litigation giving a statement as to what he

8    observed in this case.

9              Beyond that, they weren't identified in plaintiff's

10   26A disclosures.

11             THE COURT:  Was that when he was pro se?

12             MR. BROCKER:  No, his previous attorney before he

13   became pro se.  There was no supplement to the 26A disclosures

14   from his former attorney or current one.

15             THE COURT:  I haven't set a trial date, do you want

16   to take a deposition in this trial?  You can.

17             MR. BROCKER:  Of those two witnesses?

18             THE COURT:  Yes.  You want to take a deposition of

19   both of them?  You can.  You'll have to squeeze it in before

20   the trial date.

21             MR. RUBINSTEIN:  Can we have names and addresses?

22             THE COURT:  They are right here in the report, in

23   the list of witnesses, their addresses.  I assume they are

24   correct.

25             MR. RUBINSTEIN:  I thought they were having trouble

PROCEEDINGS

1    locating one of them.

2         THE COURT:  It says 519 Second Street, Brooklyn,

3    that's Matos; and Obadiah is 275 Madison Avenue.

4         Are those accurate?

5         MR. BAINS:  As far as I know they are.  I've spoken

6    to Mr. Obadiah, but we haven't been able to reach Mr. Matos.

7         THE COURT:  Was Mr. Matos referred to in response to

8    the summary judgment?

9         MR. BAINS:  Only I believe in my client's affidavit

10   as to who was there when the incident occurred.

11        THE COURT:  You don't even know that you can find

12   him?

13        MR. BAINS:  That's correct.

14        THE COURT:  Where is the address from?

15        MR. BAINS:  My client, that's one of the addresses

16   Mr. Matos had.

17        THE COURT:  If anybody can find him they can depose

18   him.  I don't want him showing up at the last minute.  If you

19   find him get a good solid address on him, try to subpoena him.

20   There he doesn't show up, he doesn't show up.  I don't want

21   him walking up on the first day of trial and mysteriously

22   showing up.

23        MR. BAINS:  I understand.

24        THE COURT:  Then we have to go through the exhibits.

25        MR. BROCKER:  If I may ask one question.  Would the

PROCEEDINGS

1    Court be willing to, if I submitted to so order subpoenas for

2    to the Court for these witnesses, will your Honor be all right

3    fast forwarding to that because of the time crunch?

4              THE COURT:  Time crunch?  Did I set a trial date?

5              MR. BROCKER:  Not yet.

6              THE COURT:  Subpoena them, I would only subpoena

7    them to trial not a deposition.

8              MR. BROCKER:  That was my question, if you would be

9    willing to subpoena them to a deposition in advance of trial.

10             THE COURT:  I don't know, is that appropriate?  I

11   don't know.

12             MR. BROCKER:  I had it done in the past for

13   individuals who were unwilling to sit for depositions.

14   Ordinarily it takes some steps to get there, a deprivation of

15   unwillingness to come in.

16             THE COURT:  Let's try to get them first, okay.

17             MR. BROCKER:  Okay.

18             THE COURT:  Let's go through the exhibits.  The

19   criminal complaint, that's the basis for malice prosecution

20   claim?

21             MR. BAINS:  Yes.

22             THE COURT:  Why does that not come in?

23             MR. BROCKER:  I believe in terms of the criminal

24   complaint and amended complaint, Plaintiff's Exhibit 1 and 2,

25   it's really more how plaintiff was seeking to use it than was

PROCEEDINGS

1    per se admissible.  Depending on how plaintiff sees to put it

2    in evidence at that time.

3              THE COURT:  What do you mean?

4              MR. BROCKER:  So using the criminal complaint in

5    plaintiffs case in chief --

6              THE COURT:  If he's using the criminal complaint in

7    the malicious prosection charge --

8              MR. BROCKER:  To establish the charges that he

9    was --

10             THE COURT:  Yes.

11             MR. BROCKER:  I think that would be the proper use.

12             THE COURT:  Improper.

13             MR. BROCKER:  No, a proper use.  We're not objecting

14   to authenticity, that's not an issue here.  It does seem to be

15   relevant.  I think the only request is, I don't think there is

16   any dispute as to the charge if it's cumulative.

17             THE COURT:  I'll let the complaint in.

18             Deed to the property.  This is because they want to

19   show the origin of the dispute.  Is there any authenticity

20   about the deed?  You didn't object to anything, right?

21             MR. RUBINSTEIN:  I did not, your Honor.

22             THE COURT:  There is no authenticity issues about a

23   deed, right?  That will come in.

24             Certificate of disposition, is that the dismissed

25   for speedy trial?

PROCEEDINGS

1            MR. BAINS:  That's correct.

2            THE COURT:  I don't know why that's not relevant,

3    he's got to prove a favorable disposition, right?

4            MR. BROCKER:  I think that, again, to the extent

5    that it's actually in dispute, I'm not sure that it's

6    necessary.

7            THE COURT:  He can prove his case.

8            MR. BROCKER:  Yes.  So I think certainly the

9    relevance objection -- I'm happy to withdraw at this point.

10           THE COURT:  Okay.  But New York City police reports

11   of the March 4, 2014, arrest, that's the arrest at issue,

12   right?

13           MR. BROCKER:  Yes.

14           MR. BAINS:  Yes.

15           THE COURT:  Why don't they come in?

16           MR. BROCKER:  I believe there is, at a minimum,

17   disagreement in the courts as to whether or not those

18   documents, they can form a malice prosecution.  They would

19   never be presented to a jury.  So without, again, to some

20   extent on how they sought to have them admitted into evidence

21   without somebody I think testify that they had an impact on

22   the prosecution, it doesn't seem those documents would be

23   relevant to the claim.

24           THE COURT:  Why are they relevant?

25           MR. BAINS:  Judge, they were actually more likely

PROCEEDINGS

1   than not.  I would the only know when the police officer

2   testifies.  They were created after the arrest.  They explain

3   the arrest, essentially.  Because that's what these police

4   arrest reports normally do.

5           THE COURT:  What do you want them in for?

6           MR. BAINS:  To show what these police officers were

7   thinking after they had arrested Mr. Gordon.  And if you take

8   a look at some of the reports they say no visible injury, no

9   redness.

10          THE COURT:  This is signed by the arresting officer.

11          MR. BAINS:  I haven't seen it, but most reports are.

12          THE COURT:  It can come in.

13          The 911 call, you don't have that yet.  When are you

14  going to get that?

15          MR. BAINS:  We're attempting to get it from the

16  attorney who is represented Mr. Gordon on the criminal case.

17  I expect to get an answer in the next week or so.

18          THE COURT:  Why has that taken all this time to find

19  that answer out?  He either has it or doesn't.

20          MR. BAINS:  Mr. Gordon is telling me he has it.

21  It's really my fault than anybody else's, I thought that they

22  had it, the 911 tape.

23          THE COURT:  Who is they?

24          MR. BAINS:  Mr. Brocker.  I had spoken to him last

25  week, he indicated that he didn't have it.

PROCEEDINGS

1          THE COURT:  When did first talk to his defense

2    counsel about getting it?

3          MR. BAINS:  I've left messages.  Mr. Gordon is

4    telling me that he has it, so I need to confirm that and get

5    it from him.

6          THE COURT:  He hasn't called you back?

7          MR. BAINS:  Not yet, but this week and next week

8    I'll be contacting him.

9          THE COURT:  Who was defense counsel?

10          MR. BAINS:  I have the name in my office.  We did

11    reach out to him.  We're waiting for a response.

12          THE COURT:  Is there a transcript of the 911 call?

13          MR. BAINS:  I haven't seen a full transcript.  I've

14    seen bits and pieces that were provided in earlier motions.

15          THE COURT:  The City doesn't have the 911 call?

16          MR. BROCKER:  I don't believe so, your Honor.  I did

17    a thorough investigation in the file, I did not find the

18    audio.  I was somewhat surprised there was audio of this

19    incident preserved.  Ordinarily, those tapes are destroyed

20    fairly quickly, generally before the initiation of a civil

21    proceeding.

22          THE COURT:  But it was criminal.

23          MR. BROCKER:  So yes, I -- because of the way

24    discovery proceeded in this case and how little was done, that

25    anybody who pursued the avenue of getting, seeking, any

PROCEEDINGS

1   records from either defense attorney, which ordinarily has

2   very limited success from getting records from the City.  But

3   the City I didn't believe, and I continue not to believe, the

4   Law Department didn't request it, and I don't believe the

5   police department preserved those recordings, so any recording

6   would exist elsewhere.

7           MR. BAINS:  Although they don't save the recordings,

8   they do save the radio run.

9           MR. BROCKER:  I believe that's Officer Emmanuel,

10  exactly what you're referring to.

11          THE COURT:  We've got to resolve this in two weeks,

12  and you've got to let the Court and counsel know.  If you get

13  it, you have got to provide a copy.

14          MR. BAINS:  I shall, Judge.

15          THE COURT:  No one objected to anything that of the

16  defendant police officers documents.  We've discussed that the

17  documents regarding the property will come in.

18          What are the e-mails?  You're objecting to these

19  e-mails.

20          MR. BROCKER:  I think that Officer Emmanuel's

21  objection to, I think it's DV1 all the way through DV12, are

22  fundamentally similar.  It's really, they all relate to the

23  issue of who had access to the property, an issue that Officer

24  Emmanuel did not believe is relevant or necessary to the

25  proceeding.  To the extent that --

PROCEEDINGS

1          THE COURT:  Then we get to the last --

2          MR. BROCKER:  The last, 213 and 14, I am happy to

3   withdraw all of the objections related to 13 and --

4          THE COURT:  Did plaintiff object to 13?

5          MR. BAINS:  Judge, we discussed that earlier I

6   believe here.

7          THE COURT:  But that's before I knew that these

8   objections were just being filed by --

9          MR. BAINS:  We may not have, but we do object to

10  that now 13 and 14.  Again, for the same reasons you stated,

11  that if there is an inconsistent statement they can bring it

12  out on cross-examination or particular sections, if it's his

13  statement.

14         MR. BROCKER:  I apologize, just to finish my

15  thought.  Officer Emmanuel withdraws his objections to 13 and

16  14.

17         THE COURT:  But now plaintiff objects to 13.

18         MR. BAINS:  But the plaintiff understands your

19  ruling when we discussed 13, we don't have an issue with that.

20         THE COURT:  I'm not sure that 13 comes in on the

21  basis that another judge's view of credibility in a different

22  case, to the extent it's being offered so someone could argue

23  that Mr. Gordon lied -- a judge found that Mr. Gordon lied in

24  another case.  I don't think that's admissible.  I'm not

25  saying that he can't be necessarily questioned about this.  I

PROCEEDINGS

1   mean, if the judge finds that he lied about let's say X, Y,

2   and Z, I'm not sure that it would be inappropriate to say, to

3   ask a question about whether or not he lied about that on that

4   occasion.  He can answer yes or no.  That doesn't mean the

5   judge's view of it comes into evidence, but he can be

6   questioned.  It's a good faith basis to ask questions about

7   whether he lied in the other case.  I take it these were

8   statements made under oath?

9           MR. BAINS:  I believe so, Judge.

10          THE COURT:  They can, that's a more than a good

11  faith basis to ask him about them.  But this opinion coming

12  into evidence with the bankruptcy judge's finding, I don't

13  think it comes in for the purposes of saying another judge

14  found you lied.

15          Is there anything else that we need to -- that's

16  really an issue -- that we need to resolve here today?  My

17  primary objective is to iron everything out ahead of time.  I

18  don't want jurors there while we're quibbling if something

19  does or doesn't come in.

20          Is there anything else set forth in these exhibits

21  that we need to have resolved today?

22          MR. BROCKER:  Yes, your Honor.  One thing that came

23  up subsequent to the motion for summary judgment in drafting

24  the JPTO is that plaintiff appears to be attempting to

25  articulate a state law claim in this action now.  There was

PROCEEDINGS

1    never a notice of claim filed that --

2              THE COURT:  State law claim for what?

3              MR. BROCKER:  I believe malicious prosecution.

4              THE COURT:  That was the subject of our order.  I

5    believe we addressed the state law claim, correct?

6              MR. BROCKER:  I thought so, your Honor.  But there

7    is difference of opinion on whether there was possibility to

8    state -- in any event --

9              THE COURT:  Whether it was?

10             MR. BROCKER:  Whether it was possible the state law

11   claim could survive Court's order.

12             THE COURT:  I'm sure I ruled on it.

13             MR. RUBINSTEIN:  Your Honor, attempted a line

14   against my clients.  I don't know if it was asserted against

15   Mr. Brocker's clients.

16             THE COURT:  That's true.

17             MR. BROCKER:  I don't believe it's possible to

18   assert against my client given that --

19             THE COURT:  If it's not asserted against your client

20   then why are we talking about it?

21             MR. BROCKER:  I read the JPTCO attempting to assert

22   against Officer Emmanuel, I wanted to raise that issue.  I'm

23   not sure --

24             MR. BAINS:  I fully understand there is no claim

25   against Government.

PROCEEDINGS

1        THE COURT:  So that takes care of that.

2        MR. BROCKER:  Yes.

3        THE COURT:  Anything else that either side believes

4   we need to resolve?

5        MR. BAINS:  No, Judge, nothing else at this time.

6        THE COURT:  We need to set a trial date.  May 13.

7        MR. BAINS:  Judge, that's graduation week, very bad

8   time of week.

9        THE COURT:  Which day do they graduate?

10       MR. BAINS:  One on the 11th, and one is two or three

11  days later.

12       THE COURT:  Are they graduating May 13?

13       MR. BAINS:  That's the day we have the actual

14  function, out of state.

15       THE COURT:  Is it the college graduation?

16       MR. BAINS:  Yes.

17       THE COURT:  The graduation is on May 13?

18       MR. BAINS:  The graduation is on May 11, but out of

19  town.  And then I have a two-week vacation thereafter from

20  May 16 to May 30 that I've booked tickets for.  So A little

21  earlier or later.

22       THE COURT:  June 10 then.

23       MR. BAINS:  That's fine.

24       THE COURT:  We'll have the trial day go from 11 to

25  five.  I'll have a pretrial conference June 4 at 11:00 o'clock

Rivka Teich CSR, RPR, RMR, FCRR
Official Court Reporter

PROCEEDINGS

1    just to make sure we're all on board.

2              MR. BAINS:  Thank you.

3              MR. RUBINSTEIN:  Thank you, your Honor.

4              MR. BROCKER:  Your Honor, I have one unrelated issue

5    I wanted to raise with your Honor.  In preparing for this

6    conference yesterday, it came to my attention that I don't

7    believe an answer was filed in this matter for several

8    defendants who are no longer parties, as well as Officer

9    Emmanuel.  I've spoken with plaintiff's counsel and my

10   co-defense counsel, and neither of them are objecting to

11   asking your Honor to grant a nunc pro tunc extension of time

12   until tomorrow to file such an answer.

13             THE COURT:  Okay, the application is granted.

14             MR. BROCKER:  Thank you very much, your Honor.

15             MR. BAINS:  Thank you.

16             MR. RUBINSTEIN:  Thank you.

17             (Whereupon, the matter was concluded.)

18                  *    *    *    *    *

19   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

20

21

     Rivka Teich, CSR RPR RMR FCRR
22   Official Court Reporter
     Eastern District of New York
23

24

25